# NOBELMAN ET UX. *v.* AMERICAN SAVINGS BANK ET AL.

No. 92–641.   Argued April 19, 1993—Decided June 1, 1993

*Philip I. Palmer, Jr.,* argued the cause for petitioners. With him on the brief was *Rosemary J. Zyne.*

*Michael J. Schroeder* argued the cause for respondents and filed a brief for respondent American Savings Bank, F. A. *Molly W. Bartholow* and *Charles L. Kennon III* filed a brief for respondent Standing Chapter 13 Trustee.*

JUSTICE THOMAS delivered the opinion of the Court.

This case focuses on the interplay between two provisions of the Bankruptcy Code. The question is whether § 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to

---

*Briefs of *amici curiae* urging reversal were filed for the Consumer Education and Protective Association et al. by *Henry J. Sommer, Gary Klein, Daniel L. Haller,* and *Lawrence Young;* and for *Harold J. Barkley, Jr., pro se.*

Briefs of *amici curiae* urging affirmance were filed for the State of Alaska by *Charles E. Cole,* Attorney General, *Mary Ellen Beardsley,* Assistant Attorney General, and *Richard Ullstrom;* for the American Bankers Association et al. by *John J. Gill, Michael F. Crotty, Lynn A. Pringle, Alvin C. Harrell, Laura N. Pringle,* and *James R. Martin, Jr.;* for the Federal Home Loan Mortgage Corp. by *Dean S. Cooper* and *John C. Morland;* for the Federal National Mortgage Association by *William J. Perlstein* and *Sharon A. Pocock;* for the Mortgage Bankers Association of America by *William E. Cumberland* and *Roger M. Whelan;* for the National Association of Realtors et al. by *William M. Pfeiffer* and *Laurene K. Janik;* and for Nationsbanc Mortgage Corporation by *Michael C. Barrett, Mary A. Daffin,* and *G. Tommy Bastian.*

the fair market value of the mortgaged residence. We conclude that it does and therefore affirm the judgment of the Court of Appeals.

I

In 1984, respondent American Savings Bank loaned petitioners Leonard and Harriet Nobelman $68,250 for the purchase of their principal residence, a condominium in Dallas, Texas. In exchange, petitioners executed an adjustable rate note payable to the bank and secured by a deed of trust on the residence. In 1990, after falling behind in their mortgage payments, petitioners sought relief under Chapter 13 of the Bankruptcy Code. The bank filed a proof of claim with the Bankruptcy Court for $71,335 in principal, interest, and fees owed on the note. Petitioners' modified Chapter 13 plan valued the residence at a mere $23,500—an uncontroverted valuation—and proposed to make payments pursuant to the mortgage contract only up to that amount (plus prepetition arrearages). Relying on § 506(a) of the Bankruptcy Code,[1] petitioners proposed to treat the remainder of the bank's claim as unsecured. Under the plan, unsecured creditors would receive nothing.

The bank and the Chapter 13 trustee, also a respondent here, objected to petitioners' plan. They argued that the proposed bifurcation of the bank's claim into a secured claim for $23,500 and an effectively worthless unsecured claim modified the bank's rights as a homestead mortgagee, in vio-

---

[1] Section 506(a) provides, in part, as follows:
"An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U. S. C. § 506(a).

lation of 11 U. S. C. §1322(b)(2). The Bankruptcy Court agreed with respondents and denied confirmation of the plan. The District Court affirmed, *In re Nobelman*, 129 B. R. 98 (ND Tex. 1991), as did the Court of Appeals, 968 F. 2d 483 (CA5 1992). We granted certiorari to resolve a conflict among the Courts of Appeals.[2]  506 U. S. 1020 (1992).

## II

Under Chapter 13 of the Bankruptcy Code, individual debtors may obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court. Section 1322 sets forth the elements of a confirmable Chapter 13 plan. The plan must provide, *inter alia,* for the submission of a portion of the debtor's future earnings and income to the control of a trustee and for supervised payments to creditors over a period not exceeding five years. See 11 U. S. C. §§ 1322(a)(1) and 1322(c). Section 1322(b)(2), the provision at issue here, allows modification of the rights of both secured and unsecured creditors, subject to special protection for creditors whose claims are secured only by a lien on the debtor's home. It provides that the plan may

> "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U. S. C. § 1322(b)(2) (emphasis added).

The parties agree that the "other than" exception in § 1322(b)(2) proscribes modification of the rights of a homestead mortgagee. Petitioners maintain, however, that their

---

[2] Four Circuits have held that § 1322(b)(2) allows bifurcation of undersecured homestead mortgages. *In re Bellamy,* 962 F. 2d 176 (CA2 1992); *In re Hart,* 923 F. 2d 1410 (CA10 1991); *Wilson* v. *Commonwealth Mortgage Corp.,* 895 F. 2d 123 (CA3 1990); *In re Hougland,* 886 F. 2d 1182 (CA9 1989).

Chapter 13 plan proposes no such modification. They argue that the protection of § 1322(b)(2) applies only to the extent the mortgagee holds a "secured claim" in the debtor's residence and that we must look first to § 506(a) to determine the value of the mortgagee's "secured claim." Section 506(a) provides that an allowed claim secured by a lien on the debtor's property "is a secured claim to the extent of the value of [the] property"; to the extent the claim exceeds the value of the property, it "is an unsecured claim."[3] Petitioners contend that the valuation provided for in § 506(a) operates automatically to adjust downward the amount of a lender's undersecured home mortgage before any disposition proposed in the debtor's Chapter 13 plan. Under this view, the bank is the holder of a "secured claim" only in the amount of $23,500—the value of the collateral property. Because the plan proposes to make $23,500 worth of payments pursuant to the monthly payment terms of the mortgage contract, petitioners argue, the plan effects no alteration of the bank's rights as the holder of that claim. Section 1322(b)(2), they assert, allows unconditional modification of the bank's leftover "unsecured claim."

This interpretation fails to take adequate account of § 1322(b)(2)'s focus on "rights." That provision does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage. Rather, it focuses on the modification of the *"rights of holders"* of such claims. By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioners' home. Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. It was permissible for petitioners to seek a valuation in proposing their Chapter 13 plan, since § 506(a) states that "[s]uch

---

[3] As a general provision under Chapter 5 of the Bankruptcy Code, § 506(a) applies in an individual bankruptcy case under Chapter 13. See 11 U. S. C. § 103(a).

value shall be determined . . . in conjunction with any hearing . . . on a plan affecting such creditor's interest." But even if we accept petitioners' valuation, the bank is still the "holder" of a "secured claim," because petitioners' home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,500 is an "unsecured claim componen[t]" under § 506(a), *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 239, n. 3 (1989) (internal quotation marks omitted); however, that determination does not necessarily mean that the "rights" the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim.

The term "rights" is nowhere defined in the Bankruptcy Code. In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "[p]roperty interests are created and defined by state law." *Butner* v. *United States*, 440 U. S. 48, 54–55 (1979). See also *Barnhill* v. *Johnson*, 503 U. S. 393, 398 (1992). Moreover, we have specifically recognized that "[t]he justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." *Butner, supra*, at 55. The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under Texas law. They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure. See Record 135–140 (deed of trust); *id.*, at 147–151 (promissory note); Tex. Prop. Code Ann. §§ 51.002–51.005 (Supp. 1993). These are the rights that were "bargained for by the mortgagor and the mortgagee," *Dewsnup* v. *Timm*,

502 U. S. 410, 417 (1992), and are rights protected from modification by § 1322(b)(2).

This is not to say, of course, that the contractual rights of a home mortgage lender are unaffected by the mortgagor's Chapter 13 bankruptcy. The lender's power to enforce its rights—and, in particular, its right to foreclose on the property in the event of default—is checked by the Bankruptcy Code's automatic stay provision. 11 U. S. C. § 362. See *United Savings Assn. of Texas* v. *Timbers of Inwood Forest Associates, Ltd.*, 484 U. S. 365, 369–370 (1988). In addition, § 1322(b)(5) permits the debtor to cure prepetition defaults on a home mortgage by paying off arrearages over the life of the plan "notwithstanding" the exception in § 1322(b)(2).[4] These statutory limitations on the lender's rights, however, are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition.

Petitioners urge us to apply the so-called "rule of the last antecedent," which has been relied upon by some Courts of Appeals to interpret § 1322(b)(2) the way petitioners favor. *E. g., In re Bellamy,* 962 F. 2d 176, 180 (CA2 1992); *In re Hougland,* 886 F. 2d 1182, 1184 (CA9 1989). According to this argument, the operative clause "other than a claim secured only by a security interest in . . . the debtor's principal residence" must be read to refer to and modify its immediate antecedent, "secured claims." Thus, § 1322(b)(2)'s protection would then apply only to that subset of allowed "secured claims," determined by application of § 506(a), that are secured by a lien on the debtor's home—including, with respect to the mortgage involved here, the bank's secured claim for $23,500. We acknowledge that this reading of the clause is quite sensible as a matter of grammar. But it is not com-

---

[4] Under § 1322(b)(5), the plan may, "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due."

pelled. Congress chose to use the phrase "claim secured . . . by" in § 1322(b)(2)'s exception, rather than repeating the term of art "secured claim." The unqualified word "claim" is broadly defined under the Code to encompass any "right to payment, whether . . . secure[d] or unsecured" or any "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether . . . secure[d] or unsecured." 11 U. S. C. § 101(5) (1988 ed., Supp. III). It is also plausible, therefore, to read "a claim secured only by a [homestead lien]" as referring to the lienholder's entire claim, including both the secured and the unsecured components of the claim. Indeed, § 506(a) itself uses the phrase "claim . . . secured by a lien" to encompass both portions of an undersecured claim.

This latter interpretation is the more reasonable one, since we cannot discern how § 1322(b)(2) could be administered under petitioners' interpretation. Petitioners propose to reduce the outstanding mortgage principal to the fair market value of the collateral, and, at the same time, they insist that they can do so without modifying the bank's rights "as to interest rates, payment amounts, and [other] contract terms." Brief for Petitioners 7. That appears to be impossible. The bank's contractual rights are contained in a unitary note that applies at once to the bank's overall claim, including both the secured and unsecured components. Petitioners cannot modify the payment and interest terms for the unsecured component, as they propose to do, without also modifying the terms of the secured component. Thus, to preserve the interest rate and the amount of each monthly payment specified in the note after having reduced the principal to $23,500, the plan would also have to reduce the term of the note dramatically. That would be a significant modification of a contractual right. Furthermore, the bank holds an adjustable rate mortgage, and the principal and interest payments on the loan must be recalculated with each adjustment in the interest rate. There is nothing in the mortgage

contract or the Code that suggests any basis for recalculating the amortization schedule—whether by reference to the face value of the remaining principal or by reference to the unamortized value of the collateral. This conundrum alone indicates that § 1322(b)(2) cannot operate in combination with § 506(a) in the manner theorized by petitioners.

In other words, to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence.

The judgment of the Court of Appeals is therefore

*Affirmed.*

JUSTICE STEVENS, concurring.

At first blush it seems somewhat strange that the Bankruptcy Code should provide less protection to an individual's interest in retaining possession of his or her home than of other assets. The anomaly is, however, explained by the legislative history indicating that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market. See *Grubbs* v. *Houston First American Savings Assn.*, 730 F. 2d 236, 245–246 (CA5 1984) (canvassing legislative history of Chapter 13 home mortgage provisions). It therefore seems quite clear that the Court's literal reading of the text of the statute is faithful to the intent of Congress. Accordingly, I join its opinion and judgment.