**In re Catherine WETHERBEE, Debtor.**

**In re John G. CHAMBERS, II, Debtor.**

**Bankruptcy Nos. 93–564–JEY, 92–3732–JEY.**

United States Bankruptcy Court,
D. New Hampshire.

Jan. 14, 1994.

---

Bruce E. Barron, Salem, NH, for debtors.

James H. Eaton, III, Eaton and Chandler, Lawrence, MA, for First Essex Sav. Bank.

Bernard H. Campbell, Beaumont, Mason & Campbell, Salem, NH, for Shawmut Bank, N.A.

Lawrence P. Sumski, Amherst, NH, Trustee.

1. According to Debtor's Chapter 13 Plan First Essex Bank holds a first mortgage for $20,-600.00; Shawmut Bank holds a second mortgage for $94,101.20; and C.W. Beene holds a third mortgage for $20,000.00. The fair market value of the residence is approximately $112,-000.00 (First Essex appraisal January, 1993).

Gerri Karonis, Manchester, NH, for U.S. Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The issue in these cases is whether 11 U.S.C. § 1322(b) prevents the debtor from modifying the rights of a secured lender who holds a mortgage on a house which was, at the time the loan was granted, the debtor's primary residence but, at the time of the bankruptcy filing, was no longer the debtor's homestead. The issue has arisen in both cases in the context of confirmation of the Debtor's Chapter 13 Plan.

*In re Catherine Wetherbee*

In this case, the residence at issue has three mortgages outstanding totalling $134,-701.20 [1]. The Chapter 13 plan proposes to modify the rights of all three mortgagees by recalculating the amortization schedule of the loans and extending the current payment schedules. The first mortgage holder, First Essex Bank (formerly First Essex Savings Bank), has objected to confirmation of the plan.

In 1977, First Essex Bank refinanced a currently existing homestead mortgage in the personal residence of Catherine Wetherbee (formerly Catherine Iannacchino) and her then husband Michael Iannacchino in Salem, New Hampshire. Sometime thereafter Catherine and Michael divorced. Catherine was conveyed the premises which she converted from a single family residence to a two family residence, living on one side and renting the other.

When Catherine remarried she moved her home to Ashburn, New Hampshire and retained the Salem property exclusively for rental income. Both the second and third mortgages were obtained when at least a portion of the security was rental income thus section 1322(b) homestead exclusion does not apply [2]. On the other hand, at the

Thus the first and second mortgagees hold fully secured claims.

2. The Debtor is clearly entitled to modify the rights of the second and third mortgagors because both at the time of the loans and at the

time First Essex Bank granted the mortgage, the property was the Debtor's primary residence.

*In re John G. Chambers*

Although the basic facts in this case are variant from those above, the ultimate result and issue presented is exactly the same. In September 1986, the debtor obtained a mortgage from Sears Mortgage Company on property which was, at the time the loan was made, his primary residence. Soon thereafter, with full knowledge of the mortgagee, the debtor moved his primary residence from the property. The Debtor filed for a petition for relief under chapter 13 of the Bankruptcy Code in December of 1992.

The debtor's chapter 13 plan proposes to modify Sears Mortgage Company's claim into secured and unsecured portions under 11 U.S.C. § 506[3]. Sears has objected to confirmation contending the plan violates 11 U.S.C. § 1322(b)(2). *Nobleman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (holding chapter 13 debtor may not bifurcate a claim secured only by debtor's primary residence into secured and unsecured portions).

### *Discussion*

To rule on the objections by the secured creditors in each of these cases, the Court must determine the relevant date of inquiry, i.e. the date the loan was granted or the date of the filing of the bankruptcy petition. Both First Essex Bank and Sears Mortgage Company (hereinafter "the banks") contend that, because *at the time their loan was granted,* the property securing the loan was the Debtor's primary residence, 11 U.S.C. § 1322(b)(2) prohibits modification of its secured claim as proposed by the Plan. The debtor contend that, because *at the time of the bankruptcy filing,* the property was not the debtor's primary residence, 11 U.S.C. § 1322(b)(2) allows modification of the se-

cured claim as proposed by the Plan. The relevant statutory provision states:

"(b) Subject to subsections (a) and (c) of this section, the plan may—

... (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's primary residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

11 U.S.C. § 1322(b)(2).

The question is therefore one of statutory interpretation, i.e. what is the meaning of the phrase "a claim secured only by a security interest in real property *that is the debtor's primary residence.*" The first canon of statutory construction is that the words of a statute should be given their plain meaning. If the meaning is clear, the inquiry of the court is complete. In that situation, the function of the court is to enforce the law according to its terms. *United States v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Only in the "rare and exceptional" case when the language of a statute is ambiguous on its face should the Court inquire into the legislative history to attempt to derive Congressional intent. *Demarest v. Manspeaker,* 498 U.S. 184, 190–191, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991); *Burlington Northern R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987).

These "rare and exceptional" circumstances only exist when "application of the statute as written will produce a result 'demonstrably at odds with the intentions of its drafters.'" *Demarest,* 498 U.S. at 190, 111 S.Ct. at 604 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *E.g., United States v. Ron Pair Enterprises, Inc., supra.* Simply stated, following the current emphasis of the Supreme Court in interpreting statutes, except in extraordinary circum-

---

time of the bankruptcy filing, the property was being used at least in part as rental property and was not solely the residence of the debtor. 11 U.S.C. § 1322(b)(2), *In re Catherine Wetherbee,* Court Order (BK Court Doc. No. 23).

**3.** Sears holds a $98,630.39 mortgage in the debtor's property. The chapter 13 plan proposes to modify the claim by reducing the secured portion of the claim to $65,000, the current market value of the property and treating the remaining portion as unsecured.

stances the judiciary must assume that Congress knows what it says and says what it means [4].

As noted above, the statute in question provides that a Chapter 13 plan may modify secured claims other than "a claim secured only by * * * the debtor's principal residence." 11 U.S.C. § 1322(b)(2). A "claim" is a term of art in a bankruptcy proceeding which defines a creditor's right of payment in the bankruptcy proceeding [5]. A "claim" in bankruptcy arises at the date of the filing of the petition [6]. *In re Boisvert,* 156 B.R. 357 (Bankr.D.Mass.1993); *In re Amerson,* 143 B.R. 413 (Bankr.S.D.Miss. 1992); *In re Groff,* 131 B.R. 703, 706 (Bankr. E.D.Wis.1991); *In re Green,* 7 B.R. 8, 9 (Bankr.S.D.Ohio 1980). Therefore, only if a claim is secured by the debtor's principal residence at the time of the bankruptcy petition is the debtor prohibited from modifying the creditor's interest under the plain language of 11 U.S.C. § 1322(b)(2).

My interpretation of Section 1322(b)(2) is in accord with *In re Boisvert* 156 B.R. 357 (Bankr.D.Mass.1993), a recent decision issued by Judge Feeney in the Bankruptcy Court in the District of Massachusetts. Although the essential issue of the statutory construction of 11 U.S.C. § 1322(b)(2) in that case is the same as the issue before me today, the underlying facts were somewhat different. In that case, at the time the bankruptcy petition was filed, the bank held a claim secured only by the debtor's primary residence although the claim had been secured by additional collateral prior to the filing [7]. The debtor's chapter 13 plan proposed to modify the bank's mortgage by bifurcation under 11 U.S.C. § 506. Judge Feeney denied confirmation of the debtor's plan, finding the § 1322 proviso applicable, notwithstanding the debtor's argument regarding the legislative history of section 1322(b)(2) pertaining to the Congressional intent behind the primary residence exception of the provision. The Court in *Boisvert* stated that the language of the statute was unambiguous and the legislative history of the statute could not be used to depart from its plain meaning. The Court held the relevant point of inquiry was the date of the filing of the Chapter 13 petition.

Both First Essex Bank and Sears Mortgage Company ground their objections on the well-reported legislative history behind the provisions of 11 U.S.C. § 1322(b)(2) which indicates a legislative intent to protect long-term home mortgage financing. *See Grubbs v. Houston First Amer. Sav. Ass'n,* 730 F.2d 236, 245–46 (5th Cir.1984) (outlines legislative history of 11 U.S.C. § 1322(b)). However, although the recited legislative history is not in complete harmony with the ordinary meaning of the words actually chosen, a literal reading of the provision does not result in an interpretation so unreasonable as to produce an absurd result [8]. *See Maine v. Thiboutot,* 448 U.S. 1, 8, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555, 561–62 (1980) ("Congress was aware of what it was doing and the legislative history does not demonstrate that the plain language was not intended. Petitioners' arguments amount to the claim that had Congress been more careful, and had fully thought out the relationship

---

4. For a complete discussion of the Supreme Court's current trend to rigorously apply the plain meaning rule see *In re Public Service Company of New Hampshire,* 108 B.R. 854, 857–880 (Bankr.D.N.H.1989).

5. *See* 11 U.S.C. § 101(5)(A) and (B).

6. A "claim" in bankruptcy is defined by Section 502 of the Code which states in relevant part: "(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects. (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claims is made, the court ... shall determine the amount of such claim ... as of the date of the filing of the petition."

7. The debtor's original loan was secured by the debtor's home and two other properties jointly owned by the debtor and her brother. In the year prior to the bankruptcy filing, the debtor sold the two additional properties and the bank released those portion of the mortgage in exchange for sale proceeds. Thus at the time the bankruptcy petition was filed, the loan was secured only by the debtor's residence.

8. Exception to the plain meaning rule requires "absurdity ... so gross as to shock the general moral or common sense." *In re Public Service Co. of N.H.,* 108 B.R. at 879 n. 22 (*quoting Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930)).

among the various sections, it might have acted differently.") (*quoted in In re P.S.N.H.*, 108 B.R. at 879). In sum, although the present situation very well may not have been considered by Congress at the time of the legislative enactment, this fact does not compel the conclusion that the language does not mean what it says.

### *Conclusion*

■ In summary, at the date of the filing of the Wetherbee bankruptcy petition, First Essex Bank's claim was *not* secured by property which was the Wetherbee debtor's primary residence; and at the date of filing the bankruptcy petition, Sears Mortgage Company's claim was *not* secured by property which was the Chamber debtor's primary residence. Thus each debtor may modify the terms of the existing mortgage. · A separate order to that effect shall be issued concurrently in accordance with this opinion in each case.