**In re Thomas W. SMITH and Joy A. Smith, Debtors.**

**Bankruptcy No. 94–10295–MWV.**

United States Bankruptcy Court, D. New Hampshire.

Dec. 30, 1994.

H. Edward McBurney Jr., North Conway, NH, for debtors.

Eric E. Nord, Manchester, NH, for Diversified Financial.

Lawrence Sumski, Chapter 13 Trustee, Amherst, NH.

*MEMORANDUM OPINION*

MARK W. VAUGHN, Bankruptcy Judge.

The matter before the Court is the confirmation of the Chapter 13 plan of the debtors, Thomas W. and Joy A. Smith (the "Smiths") and the objection thereto of Diversified Financial Systems, Inc. ("Diversified"), a secured creditor. Also before the Court is a request for sanctions brought by Diversified in its motion to compel discovery. The Court ruled upon the motion to compel discovery at a prior hearing, but carried over the issue of sanctions to the confirmation hearing. An evidentiary hearing was held on October 28, 1994, and supplemental briefs were filed by the parties on or before November 4, 1994. For the reasons set out below, the Court denies confirmation of the Smiths' Chapter 13 plan and Diversified's request for sanctions.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C.

§§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## FACTS

On or about July 14, 1989, the Smiths executed a "Retail Installment Contract and Security Agreement" (the "Agreement") with Merchants National Bank for the purchase money financing of a Commodore 1988 Sandpiper 14' × 80' mobile home. Merchants National Bank perfected its security interest by filing UCC–1s at the Registry of Deeds, Town Clerk's office and Secretary of State. *See* N.H.Rev.Stat.Ann. § 477:44, IV (1992) (permitting creation of security interest in manufactured housing by complying with UCC filing requirements). The Agreement was subsequently assigned to Diversified on or about April 18, 1994.

Pursuant to the Agreement, the Smiths granted Merchants a security interest in the mobile home and "all fixtures and appliances." At some point, the Smiths defaulted under the Agreement. (Debtors' Chapter 13 Plan, Court Doc. No. 3, at ¶ 3.2.) The Smiths filed Chapter 13 on February 10, 1994. On February 15, 1994, the Smiths filed their Chapter 13 plan. The plan provides, among other things, that the obligations to Diversified will be bifurcated into a secured claim of $8,000, with the balance of approximately $42,000 treated as unsecured.[1] Under the plan, unsecured creditors receive nothing. The Smiths cite section 1322(b)(2) of the Bankruptcy Code as authority for bifurcation. Although Diversified did not file a proof of claim, it objected to confirmation of the Smiths' plan on the following grounds:

1. that its security interest is a security interest only in real property that is the debtors' principal residence and cannot be modified as provided by section 1322(b)(2);

2. the value of its secured claim is greater than $8,000;

3. it has not accepted the plan and the plan does not provide for it to retain its lien or for the surrender of the property;

4. the modified interest rate provided to it in the plan is not fair; and

5. the plan is not feasible.

The Smiths, on the other hand, take the position that the section 1322(b)(2) protection does not apply to Diversified because:

1. the mobile home is not real estate; and

2. perfection of Diversified's security interest had lapsed; and

3. even if it is real estate, since the Agreement granted a security interest in "all fixtures and appliances," the debt is not secured *only* by real property which is the debtors' principal residence.

## DISCUSSION

### A. *Confirmation:*

█ The first issue before the Court is whether the Smiths' 14' × 80' mobile home is real estate for purposes of section 1322(b)(2). The Smiths argue that under New Hampshire RSA 477:44, mobile homes are real estate for purposes of transfer and conveyance only. The Court rejects this interpretation. Chapter 21 of the New Hampshire Revised Statutes Annotated, which sets forth the rules of statutory construction, provides that "[t]he words 'land,' 'lands' or 'real estate' shall include lands, tenements, and hereditaments, and all rights thereto and interests therein" and that "[m]anufactured housing as defined by RSA 674:31 shall be included in the term 'real estate.'" RSA 21:21 (1988). RSA 674:31 then goes on to define manufactured housing as follows:

As used in this subdivision, 'manufactured housing' means any structure, transportable in one or more sections, which, in the traveling mode, is 8 body feet or more in width and 40 body feet or more in length, or when erected on site, is 320

---

1. At the confirmation hearing, the Smiths and Diversified provided appraisal evidence as to the value of the collateral. The Smiths' appraiser valued the collateral at $8,000. Diversified's appraiser valued the collateral at $20,000.

square feet or more, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to required utilities, which include plumbing, heating and electrical heating systems contained therein. Manufactured housing as defined in this section shall not include presite built housing as defined in RSA 674:31–a.

RSA 674:31 (1986). In the instant case, the Smiths' mobile home is 14' × 80' and clearly fits within the definition of manufactured housing. Since the Smiths' mobile home is manufactured housing, the Court finds that it is real estate and, thus, included in section 1322(b)(2).

█ The Smiths have also raised the issue of lapse of perfection of Diversified's security interest, which the court will deal with and discuss summarily. Financing statements were filed in August 1989. The Smiths filed Chapter 13 on February 10, 1994. Since the financing statements had not lapsed as of the date of filing, perfection continues. RSA 382–A:9–403(2) (Supp.1993).

█ Having found the mobile home to be real estate, Diversified to be perfected, and there being no question that the mobile home is the Smiths' primary residence, the issue remaining before the Court is whether the Diversified debt is secured *only* by a security interest in real property that is the Smiths' principal residence. If the Court so finds, then it need go no further as the Smiths' plan cannot be confirmed as filed. *See* 11 U.S.C. § 1322(b)(2) ("Subject to subsections (a) and (c) of this section, the plan may— ... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....").

The Court realizes that other courts are divided on the effect additional collateral has on the anti-modification provisions of section 1322(b)(2). The United States Supreme Court in *Nobelman v. American Sav. Bank,* — U.S. —, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), clearly held that section 1322(b)(2) prohibits bifurcation of a secured claim through a Chapter 13 plan when the lender's claim is secured only by a lien on the debtor's principal residence. *Id.* at —, 113 S.Ct. at 2111. However, as other courts have pointed out, although the mortgage in *Nobelman* also provided a security interest in "the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents," the Court was silent on the effect of this additional collateral. *Hammond v. Commonwealth Mortgage Corp. of America (In re Hammond),* 27 F.3d 52, 56 (3rd Cir. 1994); *In re French,* 174 B.R. 1, 5 (Bankr. D.Mass.1994).

█ In the *French* case, the bankruptcy court comprehensively outlined the cases which either narrowly or expansively construed the language of 1322(b)(2). This Court finds no need to regurgitate those cases as the reader of this opinion may look to that opinion. However, the Court will adopt the test adopted by that Court, which is as follows:

In order to properly analyze the effect of 'additional collateral' on the anti-modification provisions of § 1322(b)(2), this Court believes that the test should be whether or not the 'additional collateral' set forth in the subject mortgage is nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property or is of little or no independent value. The existence of collateral which is nothing more than such an enhancement should not result in a forfeiture by the lender of the anti-modification provisions of § 1322(b)(2). This interpretation of § 1322(b)(2) more closely coincides with Congress' intent to 'encourage the flow of capital into the home lending market,' *Nobelman,* — U.S. at —, 113 S.Ct. at 2112, and to protect 'rights' which are bargained for between the mortgagor and the mortgagee as 'reflected in the relevant mortgage instruments which are enforceable under [state] law.' *Id.* at —, 113 S.Ct. at 2110.

*French,* 174 B.R. at 7. The Court further holds that fixtures by definition are part of the real estate. Black's Law Dictionary 638 (6th ed. 1990) (defining fixtures as "[a]n article in the nature of personal property which has been so annexed to the realty that it is

regarded as part of the real property."). Thus, what is left is whether the appliances in this case meet the above enunciated test.

It is apparent in this case that the appliances were purchased with the mobile home since the financing in question was purchase money and the security interest in the appliances was given to the lender at the same time that the purchase money was provided. Further, the Smiths' appraiser, who had extensive experience in the mobile home field, indicated when asked by opposing counsel that he had taken the value of the appliances into consideration when he conducted his appraisal even though he was hired to appraise the "mobile home." The Court finds on these facts and in the context of this mobile home financing that the appliances were an enhancement with little or no independent value and do not result in forfeiture by Diversified of the anti-modification protection afforded by section 1322(b)(2).

Having found Diversified's secured claim protected by section 1322(b)(2), this Court has to go no farther. The Smiths' plan cannot be confirmed as filed and thus confirmation is denied.

B. *Sanctions:*

 In its Motion for Order Compelling Discovery, Diversified requested that the Court "[o]rder sanctions be imposed against the Debtors for failure to cooperate with discovery, including reasonable attorney fees...." (Court Doc. No. 14.) The Court heard Diversified's motion to compel discovery on October 17, 1994, at which time it ordered the Smiths to "allow access to the movant's appraiser" and that the issue of sanctions be put over until the confirmation hearing. (Court Doc. No. 20.) At the confirmation hearing, the Court asked the parties to submit their arguments on sanctions in their supplemental briefs, which both parties did.

There is no question that the Smiths complied with the Court's Order of October 17, 1994. Since the Smiths complied with the Court's Order, sanctions are inappropriate. Under Federal Rule of Civil Procedure 37, made applicable by Federal Rules of Bankruptcy Procedure 9014 and 7037, sanctions may only be allowed for failure to comply with the Court's order. Rule 37(a)(4)(A), however, provides for expenses in connection with the motion to compel "unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." The Court believes that counsel for the Smiths has set forth in a supplemental memorandum sufficient circumstances, including his family emergency during the period September 14 through September 28, 1994, and the problems he encountered upon his return on the twenty-eighth, which would make an award of expenses, including attorneys' fees, unjust. This is especially appropriate when, as here, the Court had at Diversified's request shortened the response period. For these reasons, Diversified's request for expenses and sanctions is denied.