**In re Ralph and Bernadine FOUNTAIN, Debtors.**

**Bankruptcy No. 95–11102–JEY.**

United States Bankruptcy Court, D. New Hampshire.

July 3, 1996.

Grenville Clark, Gray, Wendell & Clark, PC, Manchester, NH, for Debtor.

Gary R. Chandler, REFCU, Waltham, MA, for Raytheon Credit.

Lawrence P. Sumski, Amherst, NH, Chapter 13 Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Chief Judge.

The Court has before it the debtors' Amended Chapter 13 Plan dated October 26, 1996, and an Objection thereto filed by Raytheon Employees Federal Credit Union ("Raytheon"). A hearing on the amended plan and objection was held on November 17, 1995 and a continued hearing was held on April 10, 1996. The debtors' amended plan proposes to modify the first and second mortgages that encumber their principal residence. Both mortgages are held by Raytheon, and Raytheon objects to confirmation of the amended plan on the basis that the proposed modification is impermissible pursuant to section 1322(b)(2) of the Bankruptcy Code. For the reasons set out below, the Court sustains Raytheon's objection and denies confirmation of the Fountains' amended chapter 13 plan.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### Issue

The question presented by the amended plan and objection is whether the anti-modification provision of 11 U.S.C. § 1322(b)(2) is applicable if a residential mortgage granted by the debtors has a recitation including "rents" from the property in the grant of a security interest. Specifically, does standardized additional language in the mortgage documents cause Raytheon's mortgage claims to be secured by more than the debtors' principal residence such that the mortgages may be modified?

### Discussion

The Bankruptcy Code provides that a chapter 13 plan of reorganization may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2). The Supreme Court has held that the "other than" language of section 1322(b)(2) bars bifurcation where the creditor's secured claim "is secured only by a lien on the debtor's principal residence." *Nobelman v. American Sav. Bank*, 508 U.S. 324, 332, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993).

The secured creditor here, Raytheon, took as security for its loans to the debtors first and second mortgages upon the debtors' principal residence. The mortgage documents include the following provision in the grant of a security interest to Raytheon:

"Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter

attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property are herein referred to as 'the Property'."

The debtors contend that the foregoing clause is an assignment of rents that provides additional collateral securing their obligation, and that Raytheon's claims are therefore not secured only by the debtors' principal residence, and accordingly the claims may be modified. Raytheon contends that this language is included in all standard mortgage documents, and that the debtors' obligations are secured only by a mortgage on their principal residence because Raytheon has not accepted as additional security a separate assignment of rents.

In *Nobelman*, the United States Supreme Court noted that one of the purposes of the anti-modification provision set forth in 11 U.S.C. § 1322(b)(2) was to give special protection to home lenders in order to encourage the flow of capital into the home lending market. *See Nobelman*, 508 U.S. at 332, 113 S.Ct. at 2111–12 (Stevens, J., concurring) (*citing Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236, 245–46 (5th Cir.1984)). However, the *Nobelman* decision did not address the question of what secured claims would be considered "secured only by a security interest in real property that is the debtor's principal residence."

The First Circuit Court of Appeals also has not addressed the issue presented herein. In *Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1 (1st Cir.1996), the Court of Appeals held that section 1322(b)(2) does not apply to claims secured by a multi-unit income-producing property in which the debtor resided in one of the units and, accordingly, the Court held that such claims could be modified. *Id.* at 7. Due to its determination that a claim secured by a multi-unit, income-producing property was not "secured only by the debtor's principal residence", the *Lomas* court declined to consider an alternative issue of whether an assignment of rents provision is "additional security in other, non-real property" such that section 1322(b)(2) would

not apply, or whether "an assignment of rents is not separate from a mortgagee's interest in the real property" such that the antimodification statute does apply. *Id.* at 7, n. 8.

The effect of additional collateral securing a mortgage, where such collateral is of little or no real value has been previously considered by this Court in *In re Smith*, 176 B.R. 298 (Bankr.D.N.H.1994) (Vaughn, J.). In *Smith*, the Court was presented with the secured creditor's objection to confirmation of a chapter 13 plan that proposed to modify the creditor's claim secured by the debtors' mobile home. The debtors contended that section 1322(b)(2) was inapplicable because the mobile home was not real estate, and that even if the home was real estate the debt was not secured only by the debtors' principal residence because the financing agreement contained a provision granting a security interest in "all fixtures and appliances". The Court reviewed New Hampshire law and held that the debtors' mobile home was "real estate". *Id.* at 300–301 (citing N.H. RSA 21:21 (1988)).

In addition, relevant to the issue here, the Court in *Smith* held that the granting of a security interest in fixtures and appliances purchased with the mobile home under the same financing arrangement "were enhancement with little or no independent value" and consequently did not cause the creditor's claim to be secured by real property other than the debtor's principal residence, and accordingly did "not result in forfeiture by [the creditor] of the anti-modification protection afforded by section 1322(b)(2)". *Id.* at 302. The Court explained its reasoning as follows:

The Court realizes that other courts are divided on the effect additional collateral has on the anti-modification provisions of section 1322(b)(2). The United States Supreme Court in *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), clearly held that section 1322(b)(2) prohibits bifurcation of a secured claim through a Chapter 13 plan when the lender's claim is secured only by a lien on the debtor's principal residence. *Id.* at 330–32, 113 S.Ct. at 2111. However,

as other courts have pointed out, although the mortgage in *Nobelman* also provided a security interest in "the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents," the Court was silent on the effect of this additional collateral. *Hammond v. Commonwealth Mortgage Corp. of America (In re Hammond)*, 27 F.3d 52, 56 (3rd Cir. 1994); *In re French*, 174 B.R. 1, 5 (Bankr. D.Mass.1994).

In the *French* case, the bankruptcy court comprehensively outlined the cases which either narrowly or expansively construed the language of 1322(b)(2). This Court finds no need to regurgitate those cases as the reader of this opinion may look to that opinion. However, the Court will adopt the test adopted by that Court, which is as follows:

"In order to properly analyze the effect of 'additional collateral' on the anti-modification provisions of § 1322(b)(2), this Court believes that the test should be whether or not the 'additional collateral' set forth in the subject mortgage is nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property or is of little or no independent value. The existence of collateral which is nothing more than such an enhancement should not result in a forfeiture by the lender of the anti-modification provisions of § 1322(b)(2). This interpretation of § 1322(b)(2) more closely coincides with Congress' intent to 'encourage the flow of capital into the home lending market,' *Nobelman*, 508 U.S. at 332, 113 S.Ct. at 2112, and to protect 'rights' which are bargained for between the mortgagor and the mortgagee as 'reflected in the relevant mortgage instruments which are enforceable under [state] law.' *Id.* at 329, 113 S.Ct. at 2110."

*In re Smith*, 176 B.R. 298, 301–302 (Bankr. D.N.H.1994), *quoting In re French*, 174 B.R. 1, 7 (Bankr.D.Mass.1994).

■ The *Smith* facts are not the same as those presented by this case, but the test set forth in *Smith* and the reasoning thereunder are applicable by analogy and support a broad reading of the anti-modification provi-

sion in section 1322(b)(2). Moreover, Congress enacted section 1322(b)(2) to " 'encourage the flow of capital into the home lending market' and to protect 'rights' which are bargained for between the mortgagor and the mortgagee as 'reflected in the relevant mortgage instruments which are enforceable under [state] law.' " *In re Smith*, 176 B.R. at 301, *quoting Nobelman v. American Sav. Bank*, 508 U.S. 324, 329, 332, 113 S.Ct. 2106, 2110, 2112, 124 L.Ed.2d 228 (1993) (J. Stevens, concurring).

The Bankruptcy Court for the District of New Jersey has similarly held that "where, as here, boilerplate language contained within a residential home mortgage document which is the debtor's principal residence makes no attempt to reach collateral that is personalty and not realty, the mortgagee is within the protection of the anti-modification provision of § 1322(b)(2)." *In re Eastwood*, 192 B.R. 96, 98 (Bankr.D.N.J.1996). The *Eastwood* court was faced with the same issue as presented herein and almost identical language in the mortgage document:

"The specific issue presented in this case is whether the so called 'boilerplate' language included in the Eastwood mortgage, which language provides the mortgagee with a security interest in 'improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property' removes the mortgagee's claim from the protection of § 1322(b)(2) of the Bankruptcy Code."

*Id.*

■ If I were to determine on the facts of the present case that the standardized language in the Raytheon mortgage documents precluded a mortgagee from the protections of the anti-modification provision, then Congress' intent would be wholly subverted in the majority of bankruptcy cases involving residential mortgages. Accordingly, utilizing the test set forth in *Smith*, the Court now must determine whether the provision for rents, etc. correlating to the Fountains' residence "is nothing more than an enhancement which is ... a component part of the real

property or is of little or no independent value".

In *In re Rancourt*, 123 B.R. 143 (Bankr. D.N.H.1991), this Court was presented with the issue of whether a secured creditor holding a mortgage against a chapter 11 debtor's real property along with an assignment of leases relating to the real property had sufficient interest in the rents to trigger the cash collateral provisions of the Bankruptcy Code. I observed that ownership of real property "has been likened ... to the holding of a 'bundle of sticks' representing all the various interests that can be held in real property", *id.* at 147 n. 2, and in my opinion rents are just one stick in that bundle of property rights. I also observed that " 'rents do not spring from the ground' and ... if the mortgagee seeks to collect the rents the mortgagee must likewise undertake the responsibilities and liabilities of management and operation of the business premises to justify receiving future rent payments." *Id.* at 148 (*citing In re Prichard Plaza Assoc. Ltd. Partnership*, 84 B.R. 289, 298 (Bankr.D.Mass.1988)).[1]

The Fountains have consistently occupied their home, they have never rented or considered renting any part of it to others, and Raytheon has never indicated any intent to foreclose upon the property and rent it to any third parties. There is no indicia in the mortgage documents that Raytheon has any rights to collect rents or take control of any of the other items listed in the mortgage documents until and unless Raytheon were to foreclose upon the Fountains and assume possession and control of their real property. The Court finds on these facts that the provision regarding rents, etc. in the mortgage documents was standard "boilerplate" language that added little or no independent value to the security interests held by Raytheon, and such provision therefore does not result in the forfeiture by Raytheon of the anti-modification protection provided by section 1322(b)(2) of the Bankruptcy Code.

The debtors cite this Court's decision in *In re Wetherbee*, 164 B.R. 212 (Bankr.D.N.H. 1994), for some support. In *Wetherbee*, the only question presented for decision was whether a mortgage claim could be modified where the mortgage was secured by a house which was the debtor's principal residence at the time the mortgage was granted, but which was not the debtor's principal residence at the time the bankruptcy petition was filed. The Court determined that the petition filing date was determinative under appropriate principles of statutory construction, and that the creditor's claim could be modified. The *Wetherbee* decision is not germane because that decision dealt only with a pure question of law as to *when* the determinative facts were to be found in applying the statute and not *what* facts were crucial in determining whether the statute's anti-modification provision did or did not apply.[2]

### Conclusion

In accordance with the foregoing, Raytheon's objection is sustained and confirmation of the debtors' amended chapter 13 plan is denied by separate Order entered contemporaneously herewith.

This Opinion constitute's the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate Order consistent with this Opinion.

---

1. Although I held in *Rancourt* that, "The fact that the mortgagee can't enforce his security interest in specific rents prior to taking over possession and management of the rental premises does not destroy the legal existence of an effective security interest in rents as a type of collateral held by the mortgagee at the time of the recording of the pertinent documents", *id.* at 148 (citation omitted), that holding is not determinative here. The issue here is not whether the mortgagee has a valid security interest in rents when and if such collateral materialized, but rather whether such additional collateral is an incidental aspect to the real property subject to the mortgages and of little or no value by itself.

2. It is true that footnote 2, page 213, of the *Wetherbee* opinion mentioned in passing that certain junior mortgagees who had taken their mortgages *after* the property had actually been rented out were subject to modification on that ground regardless of which date was used. Those are not the facts in the present case.