217 B.R. 358 (1998)
In re Raymond A. MARENARO.
GMAC MORTGAGE CORPORATION, Appellant,
v.
Raymond A. MARENARO, Appellee.
BAP No. RI 97-029.
United States Bankruptcy Appellate Panel of the First Circuit.
February 4, 1998.
Joel Robinson, Warwick, RI, on brief, for appellant.
James A. Murray, Pawtucket, RI, on brief, for appellee.
Before LAMOUTTE, HILLMAN and CARLO, Bankruptcy Judges.
HILLMAN, Bankruptcy Judge.
Raymond A. Marenaro ("Debtor") filed a petition under Chapter 13 of the United States Bankruptcy Code on March 18, 1997. GMAC Mortgage Corporation ("GMAC") holds a mortgage on his principal residence at 60 Smart Street, Providence, Rhode Island. Debtor's plan proposed to "cram down" GMAC's claim "pursuant to 11 USC § 506a, to the present appraised value of the real estate, 1 [sic] 11 USC § 1322(b)(2)."[1] GMAC filed an objection to the plan, asserting that the mortgage was not subject to bifurcation. The court below overruled the objection and confirmed the plan.[2] GMAC appealed. We reverse.
I. Background
A. The underlying facts[3]
The property at 60 Smart Street, Providence, Rhode Island (the "Property") has *359 been in Debtor's family for a number of years. After his father's death, title was transferred to Debtor and his mother as joint tenants. The Property is improved by a single family residence which is the principal residence of Debtor and his mother and no one else. The Debtor testified that he allows a neighbor to park on the Property and has considered charging rent for that privilege although rental of parking space is not permitted in the zone where the Property is located.
On the records of the Tax Assessor of the City of Providence the real estate comprising the Property is shown as three contiguous but separate lots, each having dimensions of forty feet by eighty feet, or 3,200 square feet each; 9,600 square feet in the aggregate. The house sits within the boundaries of one of the lots. The City Collector issues a separate tax bill for each lot.
The mortgage to GMAC was granted on January 3, 1989, the same date that Debtor's mother created the joint tenancy with Debtor. The mortgage was executed on a standard form entitled "Rhode Island Single Family". It contained the following provision:
The first mortgage is secured by 60 Smart Street, Providence, Rhode Island together with all the improvements now or hereafter erected on the property and all easements, rights, appurtenances, rents, royalties, mineral, oil, and gas fights and profits, water rights, and stock, and all the fixtures now or hereafter a part of the property. Replacements and additions shall also be covered by this security agreement. All of the foregoing referred to in this security agreement as the property.[4]
At the time the mortgage was granted to GMAC, the zoning ordinance of the City of Providence would have permitted division of the three lots and the construction of additional residences on the other two. No effort was made to realize upon that potential. On October 24, 1991, the zoning ordinance was revised and contiguous lots under the same ownership which contained less than 4,000 square feet were "merged"; for purposes of zoning the three lots became one. Debtor and his mother no longer had an unhindered right to subdivide the Property.
Evidence was introduced that potential exists for obtaining the necessary zoning board permission to divide the Property, but the Debtor has never made an effort to do so.
B. The Bankruptcy Court's conclusions of law
A Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . ." 11 U.S.C. § 1322(b)(2).
Judge Votolato specifically rejected Debtor's arguments that the potential illegal renting of parking space was any indication that the Property was more than the Debtor's residence and that the definitional language from the mortgage quoted above expanded the collateral for the mortgage beyond Debtor's residence. However, he concluded that the "probability or the likelihood" that the use of the property could be expanded beyond its past and present single-family use compelled a conclusion that the mortgage to GMAC was "not secured only by a security interest in real property that is the debtor's principal residence." He based this determination on his reading of the decision of the First Circuit Court of Appeals in Lomas Mortgage, Inc. v. Louis, 82 F.3d 1 (1st Cir. 1996).[5]
II. Standard of Review
There is no factual dispute before us. We review conclusions of law de novo. Official Unsecured Creditors' Committee v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1311 (1st Cir.1993).
*360 III. Discussion
A. The boilerplate "add-on"
Debtor contends that the quoted language from the mortgage expands its coverage beyond "only" the Debtor's residence with its inclusion of mineral rights, profits, and the like.
Whatever may be the rule elsewhere, that view has not been accepted by any court in this circuit. All of the bankruptcy judges who have faced the issue have followed Judge Boroff's analysis in In re French, 174 B.R. 1 (Bankr.D.Mass.1994):
In order to properly analyze the effect of "additional collateral" on the antimodification provisions of § 1322(b)(2), this Court believes that the test should be whether or not the "additional collateral" set forth in the subject mortgage is nothing more than an enhancement which is or can, by agreement of the parties, be made a component part of the real property or is of little or no independent value. The existence of collateral which is nothing more than such an enhancement should not result in a forfeiture by the lender of the anti-modification provisions of § 1322(b)(2).
Id. at 7. See also In re Gleckman, 212 B.R. 204 (Bankr.D.R.I.1997) (Judge Votolato); In re DaCosta, 204 B.R. 1 (Bankr.D.Mass.1996) (Judge Feeney); In re Fountain, 197 B.R. 748 (Bankr.D.N.H.1996) (Judge Yacos); In re Smith, 176 B.R. 298 (Bankr.D.N.H.1994) (Judge Vaughn).
The Bankruptcy Appellate Panel of the Ninth Circuit has also recognized French as persuasive. Lee v. Home Savings of America (In re Lee), 215 B.R. 22 (9th Cir. BAP 1997) at 4.
We find that the so-called "additional collateral" in the present case is no more than an enhancement within the French rule and affirm Judge Votolato's decision in that regard. We also affirm his holding that the potential for illegal income from parking does not support Debtor's position.
B. The potential for division
The next issue presented is whether the Property, which has been used "only" as the debtor's principal residence, is something more than that because, at one time, division of the Property would have been possible without the consent of the city, and now the Debtor could apply for a variance permitting such partition. We note again that nothing has been done to effect a division or to expand the use of the Property at any time.
It is not necessary that we consider when to look at the status of the Property: as of the time that the mortgage was granted, In re Smart, 214 B.R. 63 (Bankr.D.Conn.1997), at the petition date, In re Lebrun, 185 B.R. 665 (Bankr.D.Mass.1995), In re Wetherbee, 164 B.R. 212 (Bankr.D.N.H.1994), or at some other point in time not yet endowed with judicial acceptance. The most favorable view, for the Debtor, is to examine the status of the Property at the time of the granting of the mortgage, for at that time there was no zoning impediment to division of the Property,[6] and we shall do so for purposes of the present argument only.
Judge Votolato held that this issue must be decided in favor of the Debtor because of the decision in Lomas, supra. We respectfully disagree.
In Lomas, the property was at all relevant times a multi-family structure. It was the subject of a mortgage in the same form as that involved in this case, but with a crucial difference, the addition of "the standard one-to-four-family rider, including an assignment of rents." 82 F.3d at 2. There was never a period when the premises were "only" the residence of the debtors. Indeed, Judge Lynch specifically makes the point that distinguishes the present case from Lomas:
Were the property a single-family house, § 1322(b)(2)'s antimodification provision surely would apply and bar bifurcation, assuming Lomas' security interest did not extend to any other property.
Id. at 3.
This view has the benefit of common sense and legislative history. If an abstract potential *361 to use property in a different way, never amounting to a gleam in the eye of the owner at the time that the mortgage is given, can withhold the protection of the anti-modification language from a mortgagee, then virtually every mortgage would be subject to modification.[7] This interpretation would contradict the legislative history "indicating that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." Nobelman v. American Savings Bank, 508 U.S. 324, 332, 113 S.Ct. 2106, 2112, 124 L.Ed.2d 228 (1993) (Stevens, J., concurring).
IV. Conclusion
We hold that the Property is solely the debtor's residence. As a result, we reverse the bankruptcy court and sustain the objection to confirmation of the Chapter 13 plan. The case is remanded to the bankruptcy court for further determination consistent with this opinion.
CARLO, J., concurring.
The majority concludes that they will look at the status of the debtor's property at the time of the granting of the mortgage, because there was no zoning impediment to "division" of the property at that time. The majority concludes that GMAC's security interest does not extend to any property other than the debtor's single family house and therefore GMAC's claim may not be modified. The majority concludes that all the debtor ever had was the potential ability, but never the intent to divide the property.
I find In re Smart, 214 B.R. 63 (Bankr. D.Conn.1997), persuasive and as did the majority, I look at the status of the property at the time of the granting of the mortgage. Considering the status of the property at that time, I cannot escape the conclusion that the property was in fact, and in law, divided. The three lots were contiguous, but the lot containing the debtor's residence was physically separated from the other two lots by a stone wall. The three lots were also legally separate for purposes of property taxes and zoning. Although the majority refers to "60 Smart Street", the individual tax bills listed each lot with a different street number. The tax bills refer to 60, 112, and 116 Smart Street. Technically, GMAC took a security interest in real property, other than, or in addition to, the debtor's principal residence.[1]
I agree with Judge Votolato that this is not an easy case. I find it difficult to construct the statute and its history and apply both to the present case in such a way that it is free from challenge. While there were three separate lots, this is not a case in which we are dealing with a multi-family dwelling such as in Lomas Mortgage, Inc. v. Louis, 82 F.3d 1 (1st Cir.1996) or fifty acres of farmland such as in Federal Land Bank of Louisville v. Glenn (In re Glenn), 760 F.2d 1428 (6th Cir.), cert. denied 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). In concurring with the result reached by the majority, I consider the debtor's intent, the principal use of the property and the nature or character of the property all to be of importance.
When the debtor obtained the mortgage from GMAC, the debtor did not intend for the lots to be treated as separate properties. The debtor testified that for as long as his family has owned the land, they have always considered the three lots to be their principal residence. When applying for the mortgage, the debtor informed GMAC that the mortgage was for the debtor's principal residence. There is no suggestion that the debtor believed that he was granting a security interest in his principal residence, as well as two separate and distinct parcels of real property. I conclude that the debtor never intended to convey more than a security interest in residential real property that the debtor considered his principal residence.
The debtor's actual use of the three lots is only consistent with a conclusion that the *362 three lots together constitute the debtor's principal residence. The debtor testified that he and his mother have exclusive use of the lots. The debtor uses one of the lots to park his vehicle. The residence itself does not include a garage. The debtor allows a neighbor to park on one of the lots, but this is not inconsistent with his treatment of the two lots, which do not include his residence, as being merely appendages of his home. As the land is zoned residential, the property may not legally be used for a commercial concern.
The character of the lots which do not contain the debtor's residence also suggests a conclusion that the lots should be treated as one property. Although Judge Votolato considered the possibility that the lots could be expanded beyond their past and present single family use, Judge Votolato also made findings suggesting the unlikelihood of expanded use. Judge Votolato made findings that the lots are little; that they do not look that great; that they do not look that buildable; and that he did not think that they were very valuable as property. All of these findings suggest the unlikelihood that the property could have been used for the production of income either through sale or development.
Accordingly, I concur in the result reached by this Court.
NOTES
[1] Additional Chapter 13 Plan Provisions and Explanations ¶ 4.
[2] The transcript reveals that another attorney, representing the second mortgagee, appeared at the hearing in connection with matters not related to the present appeal. That mortgagee neither participated in the trial of the issues now before us nor in this appeal. As a result, we do not consider that her participation in the hearing below in any way affects our deliberations.
[3] The trial judge made no specific findings of fact but the transcript of the short hearing indicates an absence of factual disputes. The recitation of facts is drawn from the transcript.
[4] The quotation is from the transcript; trial exhibits were designated but not included in the record on appeal.
[5] He did not, contrary to the assertion in the "Statement of Issues to be Presented on Appeal", rely upon the decision of the district court in Lomas. In any event, the First Circuit affirmed that decision.
[6] The mortgage did contain a "due on sale" clause which would have made a transfer of title to a fraction of the property a default.
[7] 
 "For all sad words of tongue or pen
 The saddest are these: `It might have been!'"

John Greenleaf Whittier, Maud Miller st. 53 (1856).
[1] The majority notes that the mortgage contained a `due on sale' clause which would have made a transfer of a fraction of the property a default. But, surely a mortgage taking a security interest in a single-family house and other property, such as machinery, furniture, equipment, etc., which would be subject to modification and bifurcation under § 1322(b)(2), would also contain a due on sale clause making a transfer of the other property a default. I fail to see that the due on sale clause has any bearing on this decision.