### In re Warren W. & Regina A. LEIGH, Debtors.

### No. 02–46983–HJB.

United States Bankruptcy Court, D. Massachusetts.

March 31, 2004.

Christopher C. Noble, Hartford, CT, for debtor.

Joseph B. Collins, Hendel & Collins, Springfield, MA, for Robert D. Milkie.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion for Relief Regarding Valuation of Property and De-

termination of Status of Secured Claims Under 11 U.S.C. § 506(a)" (the "Motion"), filed by Warren W. and Regina A. Leigh ("Warren Leigh;" jointly the "Debtors"). The Debtors seek a determination that a secured claim held by Robert D. Milkie ("Milkie;" the "Milkie Mortgage") can be modified in their proposed Chapter 13 Plan (the "Plan"), pursuant to § 506(a) and § 1322(b)(2). Milkie opposes.

### I. FACTS AND TRAVEL OF THE CASE

The facts set forth below are not in material dispute.

On November 18, 2002, the Debtors filed a petition in this Court under Chapter 7 of the Bankruptcy Code. On February 4, 2003, the Court allowed the Debtors' motion to convert the case to one under Chapter 13.

On their bankruptcy schedules, the Debtors listed their principal residence (the "Property") as their sole real property asset, with a value of $164,500.00. The Debtors also scheduled two secured liens on the Property: 1) a first mortgage in the amount of $107,000.00 assigned to National City Mortgage; and 2) a second mortgage in the amount of $158,713.39 held by Milkie, but subject to a homestead exemption.[1]

Warren Leigh and Milkie had formerly been business partners in a restaurant known as Madeline's Restaurant, LTD, Inc. (the "Corporation"). In 1994, Warren Leigh bought out Milkie's share of the restaurant by having the Corporation grant Milkie promissory notes in the

---

1. A debtor is permitted to exempt a limited amount of property from the bankruptcy estate pursuant to 11 U.S.C. § 522(b). In Massachusetts, a debtor may choose between the exemptions listed under § 522(d) or those available under state law. Pursuant to 11 U.S.C. § 522(b)(2)(A), the Debtors selected the exemptions available under Massachusetts law.

amount of approximately $317,000.00 (the "Obligations"). Payment of the notes was secured by valid security interests in the corporate assets (the "Corporate Assets"). Subsequently, those interests were properly perfected. The Debtors also personally guaranteed payment of the Obligations and granted the Milkie Mortgage on the Property to secure that guarantee. But first, Warren Leigh recorded a homestead exemption on the Property under Massachusetts General Laws ("M.G.L.") Chapter 188, § 1 (the "1994 Homestead"). M.G.L. ch. 188, § 1 (2003). Milkie knew of the 1994 Homestead at the time of the sale. The Milkie Mortgage included the following language: "SUBJECT TO (a) two mortgages to National City Mortgage Co., each dated October 31, 1991 ... and (b) a Homestead Exemption dated September 16, 1994, recorded on November 15, 1994, which shall remain in full force and effect."

Three subsequent events become relevant. First, Milkie permitted the perfection of his security interest in the Corporate Assets to lapse by failing to continue his financing statement before it expired in 1999. Second, the restaurant failed, and the Corporation filed a Chapter 7 case in the United States Bankruptcy Court for the District of Connecticut. *In re Madeleine's Restaurant LTD, Inc.,* Case No. 01–21412–RLK (Bankr.D.Conn.2001). The trustee in bankruptcy liquidated the Corporate Assets and disbursed the proceeds to creditors, not including Milkie. And third, on June 5, 2001, Warren Leigh appeared at the Hampden County Registry of Deeds and completed and recorded another Declaration of Homestead on the Property (the "2001 Homestead"). His stated intention was to increase the amount of the exemption on the Property to a recently extended $300,000.00 limit.[2]

On March 7, 2003, the Debtors filed their Plan with the Court. The Plan lists the Obligations as a general, unsecured claim in the amount of $158,713.39 [3] after modifying the Milkie Mortgage, pursuant to 11 U.S.C. § 1322(b)(2).[4] The Plan proposes to pay Milkie a dividend of 1.16%.

Milkie filed an objection to confirmation of the Plan, asserting, inter alia, that the filing of the 2001 Homestead terminated the 1994 Homestead, thereby reversing the priority of the homestead exemption and the Milkie Mortgage.[5] After an evi-

---

**2.** By amendment approved August 4, 2000, the Massachusetts Legislature increased the exemption available under M.G.L. ch. 188, § 1 from $100,000 to $300,000. St. 2000, c. 297, § 1. Ironically, even had Warren Leigh's actions not had the disastrous effect described below, the increase would have been inapplicable to the Milkie Mortgage. *See* n. 6, *infra.*

**3.** A trial in Connecticut state court resulted in a judgment for Milkie in the amount of $158,713.39 on the Obligations. Milkie has filed a proof of claim in the amount of $197,236.93 against the estate.

**4.** Regarding the contents of a plan filed under Chapter 13, 11 U.S.C. § 1322(b) states in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . .

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

11 U.S.C. § 1322(b)(2) (2003) (emphasis supplied).

**5.** M.G.L. ch. 188, § 2 states in pertinent part:

§ 2. Designation in conveyance; manufactured homes

To acquire an estate of homestead in real property, the fact that it is designed to be held as such shall be set forth in the deed of conveyance by which the property is acquired; or, after the title has been acquired, such design may be declared by a writing duly signed, sealed and acknowledged and recorded in the registry of

dentiary hearing, the matter was taken under advisement.

## II.. *POSITIONS OF THE PARTIES*

The Debtors contend that the Plan's proposed treatment of Milkie's claim as unsecured is proper because the Milkie Mortgage was granted subject to a valid homestead exemption of $100,000.00 that is still in effect, and, owing to that exemption and a senior mortgage on the Property, the Milkie Mortgage is wholly unsecured and subject to cramdown.[6] Moreover, the Debtors argue that, because the Milkie Mortgage was taken in a transaction that also granted Milkie a security interest in other collateral of the Debtors, the anti-modification provisions of § 1322(b)(2) do not apply.

Concluding that the 1994 Homestead is still valid and in effect, the Debtors argue that the Plan's treatment of the Milkie Mortgage as a general unsecured claim is proper under 11 U.S.C. § 506(a).[7]  In their

Motion, the Debtors assert that the Milkie Mortgage is wholly unsecured if the 1994 Homestead is given the priority set forth in the mortgage instrument.[8]  Following the First Circuit Bankruptcy Appellate Panel's decision in *In re Mann*, the Debtors conclude that their treatment of the Milkie Mortgage as an unsecured claim is appropriate.  249 B.R. 831 (1st Cir. BAP 2000).  The Debtors plan to "strip off" the mortgage and void the security interest.[9]

The parties agree that Milkie took his mortgage subject to the 1994 Homestead. The Debtors maintain that, although Warren Leigh later recorded the 2001 Homestead, the 1994 Homestead was not defeated or discharged.  They remind the Court that the legislative history of M.G.L. ch. 188 and the case law suggest that homestead exemptions are to be liberally construed in favor of the holder of the estate. While acknowledging that the last sentence of M.G.L. ch. 188, § 2 prohibits the

---

deeds for the county or district in which the property is situated.... *The acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate.*
M.G.L. ch. 188, § 2. (2003) (emphasis supplied).

**6.** The Debtors have not argued, and can not argue, that any retroactive increase would be applicable to the Milkie Mortgage.  See M.G.L. c. 188, § 3; *In re Heretakis,* 293 B.R. 82, 88 (Bankr.D.Mass.2003) (automatic increase is inapplicable to previously recorded liens).

**7.** 11 U.S.C. § 506(a) states in pertinent part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so

subject to set off is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
11 U.S.C. § 506(a) (2003).

**8.** The Motion notes that the total of outstanding balance on the First Mortgage ($108,617.72) plus the $100,000 homestead exemption exceed the value of the Property ($180,000).

**9.** While not found in the Bankruptcy Code, the terms "strip off" and "strip down" have colloquial application in bankruptcy cases. "Strip off" is a term used, when, "there being no collateral value for a mortgage, the entire lien is proposed to be avoided," while "strip down" applies when, "there being insufficient collateral value for a mortgage, the lien is proposed to be reduced to the value of the collateral." *In re Mann,* 249 B.R. 831, 832 n. 1 (1st Cir. BAP 2000).

concurrent existence of two homestead exemptions for the benefit of an owner or owners, the Debtors assert that no case law supports the view that the sequential recordation of a Declaration of Homestead by the same individual for the same residence results in discharge of a previous exemption. On the contrary, the Debtors argue that only by an affirmative act that strictly conforms with M.G.L. ch. 188, § 7 may a homestead be terminated.[10] M.G.L. ch. 188, § 7 (2003).

In the alternative, the Debtors contend that the anti-modification clause of 11 U.S.C. § 1322(b)(2) does not apply to the Milkie Mortgage because the claim was not exclusively secured by the Debtors' residence. The Debtors argue that, since the Obligations were also secured by the security interest that Milkie took in the Corporate Assets, the Milkie Mortgage is removed from the protections of § 1322(b)(2).

While acknowledging that the Milkie Mortgage was taken "subject to a Homestead Exemption dated September 16, 1994," Milkie argues that the 1994 Homestead is no longer in force; it was discharged upon Warren Leigh's June 5, 2001 recordation of the 2001 Homestead. Relying upon the plain language of M.G.L. ch. 188, § 2 and the First Circuit's decision in *In re Garran*, 338 F.3d 1 (1st Cir.2003), Milkie argues that the 2001 Homestead discharged the 1994 Homestead. Milkie argues further that the Debtors cannot

posit an equitable defense such as mistake, because it was Warren Leigh's stated purpose in filing the 2001 Homestead to increase the protection offered by the exemption against "Mr. Milkie or anybody." Transcript of Evidentiary Hearing, p. 27, October 22, 2003. As such, Milkie asserts that the Milkie Mortgage: 1) is no longer second to the 1994 Homestead; 2) is not subordinated to the subsequently filed 2001 Homestead under M.G.L. ch. 188, § 1(2); and 3) is thereby secured by the value of the Property subject only to the First Mortgage.[11] Under such an analysis, the proposed Plan cannot be confirmed because it improperly treats the Milkie Mortgage as an unsecured claim.

In addition, Milkie argues that 11 U.S.C. § 1322(b)(2) prohibits modifying the Milkie Mortgage because, as of the petition date, the only collateral securing his claim was the Property. Milkie's security interests on the Corporate Assets had lapsed in 1999, and the commencement date of this case was in November of 2002. Milkie argues that, under relevant case law, the time for determining which collateral secures a claim for the purposes of § 1322(b)(2) is the petition date. As of the petition date, the only collateral securing his claim was the Milkie Mortgage on the Property. Consequently, the anti-modification provisions of § 1322(b)(2) prohibit the Plan's proposed treatment of the Milkie Mortgage.

10. M.G.L. ch. 188, § 7 states:
   § 7. Termination of estate of homestead
   An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods: 1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by 2) a release of the estate of homestead, duly signed, sealed and ac-

knowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located.
   M.G.L. ch. 188, § 7 (2003).

11. According to the formula proposed by the Debtors and summarized herein, eliminating the priority of the 1994 Homestead over the Milkie Mortgage would leave $71,382.28 of equity in the Property. *See supra*, n. 8.

In response to an inquiry from the Court, Milkie maintains that his failure to continue the perfection of his security interest in the Corporate Assets should not invoke the so-called "infield fly rule." [12] Milkie argues that there is no evidence to support a contention that, by allowing the financing statements securing the non-Property collateral of the Obligations to lapse, he acted intentionally or in bad faith to place himself in a more advantageous position under § 1322(b)(2). Milkie notes that the financing statements lapsed in 1999, and the Debtors did not file the instant bankruptcy petition for almost another three years.

Finally, Milkie argues that, even if this Court was to decide that the 1994 Homestead maintains priority over the Milkie Mortgage, section 1322(b)(2) and supporting case law prohibits the stripping off of a mortgage secured solely by the debtor's residential property, regardless of the existence of a collateral foundation. Essentially, Milkie maintains that *In re Mann* was wrongly decided. 249 B.R. 831 (1st Cir. BAP 2000).

### III. *DISCUSSION*

#### A. *The Effect of Subsequently Filed Homestead Exemptions.*

■ Massachusetts General Laws ch. 188 governs homestead exemptions. Under M.G.L. ch. 188, § 1, a homestead ex-

emption may be "acquired pursuant to this chapter by *an owner or owners* of a home." M.G.L. ch. 188, § 1 (2003) (emphasis supplied). Under M.G.L. ch. 188, § 2, "the acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate." And, under M.G.L. ch. 188, § 7, an estate of homestead:

> created under section two may be terminated during the lifetime of the owner by either of the following methods:—1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by 2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property was located.

M.G.L. ch. 188, § 7 (2003).

In recent years, bankruptcy courts in the District of Massachusetts have been asked on several occasions to pass on the interplay between these sections of M.G.L. chapter 188. The decisions have uniformly interpreted the statute to mean that, in addition to the two methods of affirmative termination listed in M.G.L. ch. 188, § 7, an estate or claim of homestead exemption is also terminated by the acquisition of a subsequent estate or claim of homestead

---

**12.** The infield fly rule is neither a rule of law or equity but of baseball. *The Common Law Origins of the Infield Fly Rule*, 123 U. Pa. L.Rev. 1474 n. 3 (1975). To summarize the rule, it prohibits an infielder from making an *intentional* "error" on a fly ball in the infield, thereby sacrificing one out on the batter in order to trap base-runners into multiple force outs. *Id.* at n. 2 (emphasis supplied). The Rule is an effort to promote fair play by prohibiting a player from profiting from his own improper conduct. *Id.* at n. 37. In spirit and application, the Rule's most likely com-

mon law analogue is the equitable concept of "unclean hands." *Id.* According to the United States Supreme Court, the doctrine of "unclean hands" is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. et al. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 815, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).

under M.G.L. ch. 188, § 2. *See In re Taylor,* 280 B.R. 294, 297–98 (Bankr.D.Mass. 2002) (holding that M.G.L. ch. 188 "provides three methods for terminating an estate of homestead. Section 7 provides for terminating a homestead by a deed conveying the subject property . . . [and] . . . Section 2 provides that a new estate of homestead defeats a prior estate"); *In re Webber,* 278 B.R. 294, 298 n. 4 (Bankr.D.Mass.2002) (ruling that, in addition "to the two methods of termination specified in § 7, an estate of homestead can also be terminated by 'the acquisition of a new estate or claim of homestead' " under § 2); *see also In re Garran,* 274 B.R. 570, 574 (Bankr.D.Mass.2002) (ruling that "Section 2 provides that: '[t]he acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate.' "). Moreover, in *In re Garran,* the First Circuit held that:

> [M.G.L. ch. 188] § 2 ensures that no individual can claim more than one homestead exemption by stating that the acquisition of a new claim of homestead defeats and discharges a previously-filed claim of homestead .... We agree that this is the proper reading of the statutory language.

338 F.3d 1, 7 (1st Cir.2003). According to these decisions, the statute provides three methods for terminating a homestead exemption: two affirmative acts under § 7; and the defeat of a prior exemption by filing a subsequent exemption under § 2.

█ Counsel for the Debtors argues that the issues involved *In re Garran* are readily distinguishable from the those here because they did not involve the "sequential filing of Homestead Declarations by the same individual for the same residence." "Debtors' Memorandum of Law in Response to Creditor Robert D. Milkie's: Objection to Chapter 13 Plan Docket No. 54 and in Support of the Debtors'

Motion for Relief Regarding Valuation of Property Docket No. 61," p. 7, December 8, 2003. In dicta, however, the First Circuit dealt with that issue head on:

> [appellant] suggests that § 2 does not apply when a new declaration of homestead is filed on the same property-that an "acquisition of a new estate or claim of homestead" means a "new estate or claim of homestead on a new home or piece of property." Certainly § 2 would have the effect of discharging a prior declaration of homestead on an old home when a Massachusetts resident purchases a new home and files a new declaration of homestead. But *there is nothing in the statute that limits § 2 to a new home purchase situation.*

*In re Garran,* 338 F.3d at 8 (emphasis supplied). This Court is satisfied that, given the language of the statute and the case law interpreting that statute, the filing of a sequential declaration of homestead under M.G.L. ch. 188, § 2 acts to discharge any previous declaration.

█ Moreover, this Court finds no merit in the Debtors' argument that, because Warren Leigh's wife-and Property co-owner-Regina Leigh did not sign the 2001 Homestead it was invalid. The authority for the acquisition of a homestead exemption is clearly stated in Chapter 188, § 1: "an owner or owners of a home." M.G.L. ch. 188, § 1 (2003). While the affirmative termination of a homestead exemption under M.G.L. ch. 188, § 7 may require the manifest assent of all property owners, the acquisition of an exemption under §§ 1 and 2, and the consequential termination of a previous estate under § 2, do not.

Warren Leigh, in compliance with the requisite statutory provisions, voluntarily acquired the 2001 Homestead to improve his position relative to Milkie and other creditors. Under M.G.L. ch. 188, only one owner is required to acquire a valid home-

stead exemption. The statute clearly indicates that the acquisition of a subsequent homestead exemption acts to "defeat and discharge any such previous estate." M.G.L. ch. 188, § 2 (2003). Consequently, this Court rules that the 1994 Homestead is no longer valid or in force, and the Debtors may no longer claim it as an exemption on the Property. The Milkie Mortgage is now second only to the First Mortgage.

B. *Application of the anti-modification provision of § 1322(b)(2).*

■ The Court next considers the Debtors' argument that the Milkie Mortgage is not protected by the anti-modification provision of 11 U.S.C. § 1322(b)(2), which states in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . .

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2) (2003) (emphasis supplied). In 1994, the Obligations were collateralized by the Milkie Mortgage and security interests in the Corporate Assets. Given those additional security interests that Milkie simultaneously took in the Corporate Assets, section 1322(b)(2) would not have prohibited the Debtors' proposed

modification of the Milkie Mortgage in 1994. *See Nobelman v. American Sav. Bank,* 508 U.S. 324, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (holding that § 1322(b)(2) prohibits modification of a secured claim where the claim is "secured *only* by a lien on the debtor's principal residence") (emphasis supplied); *In re Boisvert,* 156 B.R. 357, 359 (Bankr.D.Mass. 1993) (holding that "a claim secured only by a security interest in the Debtor's principal residence . . . is afforded the protections of 11 U.S.C. § 1322(b)(2)").[13] However, the relevant time for determining the extent of a secured creditor's collateral for § 1322(b)(2) purposes is at the commencement of the case. *See In re French,* 174 B.R. 1, 7 (Bankr.D.Mass.1994); *In re Wetherbee,* 164 B.R. 212, 215 (Bankr. D.N.H.1994); *In re Boisvert,* 156 B.R. 357, 359 (Bankr.D.Mass.1993); *In re Amerson,* 143 B.R. 413, 416 (Bankr.S.D.Miss.1992).

This Court has examined the docket and case files in the corporate Chapter 7 case in Connecticut, styled *In re Madeleine's Restaurant LTD, Inc.,* Case No. 01–21412–RLK (Bankr.D.Conn.2001). There, the Chapter 7 trustee sold the Corporate Assets to an unsecured third party on July 5, 2002, pursuant to an order of the bankruptcy court. The proceeds from that sale were disbursed to unrelated, unsecured third-party claimants; none of the proceeds were claimed by or paid to Milkie.[14] Thereafter, there was no corporate collateral available to Milkie, and where there is no collateral, there is no secured claim.

---

**13.** It is irrelevant that the Corporate Assets secured payment of the promissory notes, while the Milkie Mortgage secured payment only of the guaranty. Section 1322(b)(2) should be read to mean that payment of the Obligations had two sources of collateral, the Corporate Assets and the Property. Therefore, in 1994, the Milkie Mortgage would have been modifiable. *See In re Bouvier,* 160 B.R. 24, 25 (Bankr.D.R.I.1993).

**14.** Even had Milkie been awarded an allowed secured claim in the Corporate case and the proceeds been paid to him, Milkie would still have had a remaining claim in the instant case secured only by the Property, and the result would be the same under § 1322(b)(2). For the same reason, this Court need not here consider the import (intentionality) of Milkie's failure to continue the perfected status of his secured claim.

*See* 11 U.S.C. § 506(a) (2003). Therefore, the Obligations owed to Milkie were secured only by the Property on the date of case commencement. *See In re French,* 174 B.R. 1, 7 (Bankr.D.Mass.1994); *In re Wetherbee,* 164 B.R. 212, 215 (Bankr. D.N.H.1994); *In re Boisvert,* 156 B.R. 357, 359 (Bankr.D.Mass.1993); *In re Amerson,* 143 B.R. 413, 416 (Bankr.S.D.Miss.1992). On that basis, the Milkie Mortgage is excepted from modification under § 1322(b)(2).

### CONCLUSION

Given the foregoing findings of fact and conclusions of law, this Court finds and rules that:

1. The 2001 Homestead had the statutory effect of discharging the 1994 Homestead pursuant to M.G.L. ch. 188 § 2; and, as a result, the Milkie Mortgage is no longer subordinated to a homestead exemption; and

2. the Milkie Mortgage cannot be modified in the Debtor's Chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(2).

An Order shall issue in conformance with this Memorandum of Decision.

### ORDER

For the reasons set forth in a Memorandum of Decision of even date, this Court:

1. DENIES the Debtors' "Motion for Relief Regarding Valuation of Property and Determination of Status of Secured Claims Under 11 U.S.C. § 506(a);" and

2. ORDERS the Debtors to file an amended Chapter 13 plan, consistent with the findings of fact and conclusions of law set forth in the aforesaid Memorandum of Decision, within thirty (30) days.