**In the Matter of Susan EASON, Debtor.**

**Peggy DEW, Appellant,**

v.

**Susan EASON, Appellee.**

**Bankruptcy No. 94–05958–BGC–13. Civil Action No. 95–G–0729–S.**

United States District Court, N.D. Alabama.

April 30, 1996.

F. Hilton–Green Tomlinson, Pritchard McCall & Jones, Birmingham, AL, for movant.

Kenneth J. Gomany, Birmingham, AL, for debtor.

David P. Rogers, Birmingham, AL, Chapter 13 Standing Trustee.

### *MEMORANDUM OPINION*

GUIN, District Judge

This case is before the court on appeal from the United States Bankruptcy Court. This court has appellate jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(L), and 28 U.S.C. § 158(a). Having considered the parties' briefs and the order of the court below, this court finds that the cause is due to be reversed.

### I. Factual Background

The facts of this case are undisputed. On October 16, 1990, the debtor-appellee Susan Eason (Eason) purchased a home from creditor-appellant Peggy Dew (Dew). Eason assumed an existing mortgage owed to New South Federal Savings Bank, and gave Dew a promissory note for the remaining purchase price along with a second mortgage on the property as security for the note. Eason was to pay Dew monthly installments of $225.77, representing interest only, with the principal of the second mortgage due in full as a "balloon" payment on November 1, 1992.

On January 4, 1993, Eason filed a Chapter 13 bankruptcy petition. On August 29, 1994, an order was entered converting that case to Chapter 7. After a second Chapter 7 petition

---

**8.** *See* the NEW YORK TIMES' best-seller, PHILIP K. HOWARD, THE DEATH OF COMMON SENSE—HOW LAW IS SUFFOCATING AMERICA (1996).

was filed on September 9, 1994, Eason filed the instant Chapter 13 case.

## II. Statutory Sections

This case turns on the interpretation of 11 U.S.C. § 1322. It provides in pertinent part:

. (b) Subject to subsections (a) and (c) of this section, the plan may—

. . .

 (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .

 (3) provide for the curing or waiving of any default; . . .

## III. Issue on Appeal

The issue to be decided is whether, under 11 U.S.C. § 1322, Eason may pay the balance of a fully matured mortgage (in this case, the "balloon" payment) through a proposed Chapter 13 plan. Eason grounds her proposal on § 1322(b)(3) which allows a debtor to cure a default through a plan. Dew, meanwhile, contends that any such proposal violates her rights as a secured creditor holding a security interest in real property that is the debtor's principal residence. After reviewing the applicable law, the court concludes that to allow Eason to pay the balloon payment through the Chapter 13 plan would be an impermissible modification of the rights afforded Dew as a secured claim holder under § 1322(b)(2).

## IV. Discussion

■ Although the statutory language appears clear, federal courts have struggled with the intricacies of § 1322. In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court opted for a narrow reading of § 1322. While not directly on point factually, *Nobelman* nevertheless provides guidance regarding the interpretation and scope of § 1322. There, the Court held that § 1322(b)(2) prohibited the use of 11 U.S.C. § 506(a) to "strip down" a mortgage lien to the value of the mortgaged property where the creditor's claim was secured only by a lien on the debtor's principal residence.

Factual differences aside, however, the *Nobelman* interpretation of § 1322 is clear: the rights of a holder of a claim secured by a security interest in real property that is the debtor's principal residence are "rights that [are] 'bargained for by the mortgagor and the mortgagee' . . . and are rights protected from modification by § 1322(b)(2)." *Nobelman,* 508 U.S. at 329–30, 113 S.Ct. at 2110, 124 L.Ed.2d at 235, quoting *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In a separate opinion in *Nobelman,* Justice Stevens noted § 1322's legislative history which reflected a Congressional desire to favorably treat residential mortgagees so as to facilitate and encourage the flow of capital into the home lending market. *Nobelman,* 508 U.S. at 332, 113 S.Ct. at 2112, 124 L.Ed.2d at 237 (Stevens, J., concurring).

While lower courts have split on the application of § 1322, this court adopts the reasoning underlying those cases denying cure in similar situations. Particularly persuasive is *In re Seidel,* 752 F.2d 1382 (9th Cir.1985). *Seidel* involved a proposal to pay a matured balloon note through a Chapter 13 plan similar to the one here at issue. In affirming the district court's denial of the debtor's request to pay the note through a plan, the Ninth Circuit applied the plain meaning of the section and opined that "a deliberate intention by Congress to insulate a certain subset of creditors—those wholly secured by home mortgages—from the general authority to modify . . . is evident from the ordinary reading of the language of subsection (b)(2)." *Seidel,* 752 F.2d at 1386.

Equally persuasive are other courts denying modification. For example, in *In re Fuentes,* 167 B.R. 901 (Bankr.E.D.Mo.1994), the court refused to allow payment through a Chapter 13 plan. The *Fuentes* Court wrote:

 By allowing Chapter 13 debtors to cure prepetition defaults, the Bankruptcy Code is attempting to restore the status quo which existed but for a debtor's failure to pay installments. Here the debtor is not attempting to restore the status quo, but is trying to create a new payment schedule for the fully matured balance of the note. Such an action modifies the rights of the

Creditor and is therefore prohibited under § 1322(b)(2).

*Fuentes,* 167 B.R. at 902. Other courts have joined in this reasoning. In *In re Manocchia,* 157 B.R. 45 (Bankr.D.R.I.1993), the court cited *Nobelman* and followed *Seidel* in holding that if (b)(3) and (b)(5) were construed to permit a Chapter 13 plan to cure a matured mortgage debt, in effect creating a new payment schedule, such action would clearly involve altering the rights of the mortgagee. That court went on to say that its decision reflected the current state of the law, especially in light of *Nobelman.* While the contrary conclusion, i.e., allowing cure through a Chapter 13 payment plan, is appealing, there is no avoiding the fact that such an action is a unilateral modification of the mortgage terms and thus is clearly proscribed by the language of subsection (b)(2). It is this court's belief that Congress intended no such result.

The remaining question to be decided is the effect, if any, of the 1994 amendments to § 1322. Those enactments added a new § 1322(c) which provides in pertinent part:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> . . .
>
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Although these amendments are explicitly inapplicable to this case by virtue of their stated effective date (not to apply to cases commenced before October 22, 1994—this case was commenced on October 10, 1994), the bankruptcy court nonetheless considered them in deciding in favor of allowing cure. Specifically, the court reasoned that a congressional change in a statute not only expresses the current meaning of the statute, but also modifies the original meaning of the original statute. Congress may amend a

statute for a variety of reasons; it may do so to clarify existing law, to correct a misinterpretation of the law, or to overrule erroneously decided cases. *Wesson v. United States,* 48 F.3d 894, 901 (5th Cir.1995). It does not follow, however, that the original statute was never the law. Instead, the statute as amended becomes the new interpretative basis for all cases falling within the amended statute's purview as discerned from its effective date. Congress explicitly included a date certain from which to apply the new § 1322(c): October 22, 1994.

Even if the bankruptcy court is correct that Congress was clarifying its original intent, it is erroneous to apply the statutory additions of a later Congress in determining the intent of an earlier Congress. To do so ignores the Supreme Court's caveat that "views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334, 340 (1960). Where the views of the enacting Congress are unmistakable, the views of a subsequent Congress cannot override them. *Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 813–14, 63 L.Ed.2d 36, 54 (1980). Finally, it must be noted that Congress, within constitutional limitations, was free to apply the new § 1322(c) retroactively. There is, however, no evidence of such intent, and thus this court applies the settled rule that in the absence of a clear contrary expression, a law is presumed to operate prospectively only. *Hassett v. Welch,* 303 U.S. 303, 313, 58 S.Ct. 559, 564, 82 L.Ed. 858 (1938).

Thus, properly limiting the legal analysis to the pre-amended § 1322, this court holds that subsection (c) thereof prohibits any modification of Dew's rights as a holder of a secured claim on the debtor's principal residence. Eason, unfortunately, appears to be a victim of bad timing in the filing of her petition; nevertheless, she is unable to receive benefit of § 1322(c) as amended. Given these conclusions of law, this court finds no need to address Dew's remaining contentions involving "substantive rights" as a creditor, "discrimination" in payment of obligations,

and whether Eason engaged in a practice of serial filings to delay foreclosure by Dew.