In re Nathaniel E. NELSON, Sr. and Cassandra Ann Nelson, Debtors.

In re Thomas Lee Guenther and Katrina Adele Ryan–Guenther, Debtors.

In re Jeffrey Barrett Davis, Debtor.

In re Sherry Lynn Allison, Debtor.

Nos. 08–13756 HRT, 08–21472 HRT, 08–17931 HRT, 08–13629 HRT.

United States Bankruptcy Court, D. Colorado.

Dec. 23, 2008.

in each individual case differs somewhat from the others but, because the purpose of the new non-standard language in each case is the same, the Court will take the opportunity to express some general thoughts before addressing the specifics of each case.

Tara E. Gaschler, Denver, CO, for Nathaniel E. Nelson, Sr. and Cassandra Ann Nelson.

Jonathan A. Hagn, Law Office of Jonathan A. Hagn, P.C., Denver, CO, for Thomas Lee Guenther and Katrina Adele Ryan–Guenther.

Michael Suchoparek, Denver, CO, for Barrett Davis.

## ORDER ON OBJECTIONS TO CONFIRMATION OF CHAPTER 13 PLANS

HOWARD R. TALLMAN, Chief Judge.

### I. BACKGROUND

This case comes before the Court on objections to chapter 13 plan confirmation filed in the four above-captioned cases. All four cases involve language added to Paragraph V.G. of the Chapter 13 Plans in question. That is the section of this district's standard chapter 13 plan form that allows the addition of plan provisions that do not appear in the form plan.

In this district as well as many others around the country, plan provisions similar to the ones under consideration here are appearing in chapter 13 plans. They are focused on the handling of debtors' home mortgages during the life of chapter 13 plans. All four of these cases are considered here in a single order because they all raise similar concerns. The language

### II. DISCUSSION

The provisions in these Debtors' plans appear to be derived from model plan provisions suggested by author John Rao in his article *Fresh Look at Curing Mortgage Defaults in Ch. 13.* 27 ABI Journal 1, 14 (Feb.2008). Rao has advocated the use of a series of model plan provisions intended to address problems of post-discharge chapter 13 debtors being charged fees and expenses incurred during the pendency of their chapter 13 case without any prior notice or opportunity to question those charges. Also, the recommended plan provisions prescribe the handling of payments to the mortgage creditor in order to give effect to § 524(i).

Section 524(i) provides that the willful failure of a creditor to properly credit payments received under a plan may constitute a violation of the discharge injunction. In the home mortgage context, Rao argues that, in order to rely on § 524(i) after discharge, a debtor must include specific provisions in the plan to instruct the mortgage creditor on how the payments are to be handled. That is because § 524(i) is not self-executing and may only be used to enforce provisions that appear in the plan.

Initially, the Court will observe that these cases do not involve the application of § 524(i) to chapter 13 plans. Whether these types of specific plan provisions are necessary or not to support a hypothetical future application of § 524(i) is beside the point. In an unpublished opinion, Judge Stair, of the Eastern District of Tennessee

wrote: "the focus is not upon potential violations of § 524(i), but upon the requirements for and effects of confirmation." *In re Collins* 2007 WL 2116416 (Bankr. E.D.Tenn. July 19, 2007). This Court agrees. The Court's focus must be on insuring that the plans at issue meet the requirements for plan confirmation.

Regardless of § 524(i), disputes have arisen in numerous chapter 13 cases that focus upon mortgage creditors' allocation of payments during the course of chapter 13 plans and the fees assessed to the debtors' mortgage accounts during the pendency of the chapter 13 cases. *See, e.g., Rodriguez v. Countrywide Home Loans (In re Rodriguez)*, 396 B.R. 436 (Bankr. S.D.Tex.2008); *Padilla v. GMAC Mortgage Corp. (In re Padilla)*, 389 B.R. 409 (Bankr.E.D.Pa.2008); *In re Stewart*, 391 B.R. 327 (Bankr.E.D.La.2008). Consequently, debtors around the country are increasingly proposing chapter 13 plans containing language, similar to the language at issue here, that seeks to address those problems.

A number of courts have looked at these types of plan provisions and have published opinions with respect to what is—and is not—acceptable. Creditors have frequently claimed, unpersuasively, that all such provisions constitute modifications of their rights that are prohibited by § 1322(b)(2). But, in *Nobelman v. American Sav. Bank*, the Supreme Court observed that specific provisions of the Bankruptcy Code do modify the contractual rights of home mortgage lenders.

> The lender's power to enforce its rights—and, in particular, its right to foreclose on the property in the event of default—is checked by the Bankruptcy Code's automatic stay provision. In addition, § 1322(b)(5) permits the debtor to cure prepetition defaults on a home mortgage by paying off arrearages over the life of the plan "notwithstanding" the exception in § 1322(b)(2).

508 U.S. 324, 330, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993) (citations omitted). Thus, language that reflects the mortgage modifications that are inherent in the chapter 13 process cannot be objected to.

The broad areas that the disputed language addresses are: 1) accounting for the cure of the pre-petition arrearage separately from maintenance of post-petition payments; 2) timely notice of escrow and interest adjustments that affect ongoing payments; and 3) the Court's jurisdiction to adjudicate the reasonableness of ancillary fees and charges.

### 1) Accounting for Cure and Maintenance Payments

█ It is an essential attribute of the treatment of long term mortgage debt in a chapter 13 plan under § 1322(b)(5) that one payment goes to cure the arrearage while a different payment goes to maintain the ongoing obligations. That is inherent in § 1322(b)(5). Typically, the cure payments come from the chapter 13 trustee and the ongoing maintenance payments are paid directly by the debtor. The court in *In re Emery* said "provisions to require mortgage holders to apply payments in a certain way or to calibrate a mortgage as current do not violate the anti-modification injunction of section 1322(b)(2)." 387 B.R. 721, 723 (Bankr.E.D.Ky.2008) (citing *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 366 B.R. 584, 590–91 (Bankr. E.D.La.2007); *Nosek v. Ameriquest Mortgage Co. (In re Nosek)*, 363 B.R. 643, 645 (Bankr.D.Mass.2007) *vacated on other grounds*, 544 F.3d 34 (1st Cir.2008); *In re Wilson*, 321 B.R. 222, 223–25 (Bankr. N.D.Ill.2005)).

Indeed, the First Circuit opinion in *Nosek* highlights the difficulty a debtor encounters where the debtor's plan does not

include language that directs how payments made to the mortgage creditor are to be accounted for. The First Circuit vacated the bankruptcy court's order because it disagreed with the lower court's finding that Ameriquest's accounting practices violated the provisions of chapter 13. But it went on to say that "even if the Payment History could somehow be construed as a threat to [the debtor's] right to cure, the proper response of the bankruptcy court would have been an amendment to the Plan specifying the accounting practices necessary to eliminate that threat." 544 F.3d at 48. The court also cited with approval a comment from *In re Collins:* " 'language in a Chapter 13 plan burdening mortgagees with procedural obligations over the life of the plan does not, *per se,* violate § 1322(b)(2)'s anti-modification provision and is permissible and even desirable.' " *Nosek,* 544 F.3d at 49 (quoting *In re Collins,* 2007 WL 2116416, at *11 (Bankr.E.D.Tenn. July 19, 2007)).

In some cases, creditors have objected to language that stated that the mortgage debt would be "deemed to be contractually current" for the purpose of accounting for post-petition payments. They argue that this language is offensive because the debts are not, in fact, contractually current and such a plan provision would misrepresent the true state of the mortgage account. The Court rejects that line of argument. That type of language requires nothing more of the creditor than treating the account as current for the purpose of accounting for post-petition ongoing maintenance payments. It is perfectly consistent with the debtor's ability to cure the arrearage and maintain ongoing payments under § 1322(b)(5). Nonetheless, for the sake of greater clarity, the Court does believe that it is necessary to add qualifying language such as that suggested by Judge Brooks in *In re Hudak* that includes the statement that it is "subject to

and contingent on successful completion of mortgage cure payments and regular monthly mortgage payments under the plan." 2008 WL 4850196, at *5 (Bankr. D.Colo. Oct.24, 2008). With that alteration, it should be quite clear to mortgage creditors that the provision merely requires them to treat the account as if it is current for the purpose of accounting for ongoing mortgage payments during the pendency of the plan. The Court has not seen an instance where a court has construed such language in the manner that some mortgage creditors seem to fear.

*2) Notice of Payment Changes*

■ The Court will certainly allow language requiring timely notice of adjustments that affect the amount of the debtor's mortgage payments. Some mortgage creditors have discontinued communications with chapter 13 debtors citing a wholly unfounded fear of being held liable for violating the automatic stay through such communications. But, creditors have no right, or even any rational interest, in withholding full and timely notice from debtors as to escrow and interest rate adjustments that affect the amount of the debtor's ongoing mortgage payments. To the contrary, withholding of such timely information sabotages a debtor's ability to perform under a plan. Not only does such behavior undermine this Court's plan confirmation orders and the operation of the Bankruptcy Code, it's patently contrary to a lender's own economic interest.

The court in *In re Emery* rejected a mortgage creditor's claim that such notices were unduly burdensome and found that "it is not unreasonable to include a provision requiring [the mortgage creditor] to advise the Debtor of changes in interest rate." 387 B.R. 721, 724–25 (Bankr. E.D.Ky.2008). The real issue here is not whether a plan may require a creditor to

provide such notice, but when and to whom notice will be provided.

### 3) Retention of Jurisdiction

■ Finally, the fact that a bankruptcy court may retain post-confirmation jurisdiction over a chapter 13 plan is a given. *In re Watson*, 384 B.R. 697, 706 (Bankr. D.Del.2008) (citing *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 366 B.R. 584, 595 (Bankr.E.D.La.2007)). "Furthermore, a bankruptcy court has 'the authority to determine whether post-confirmation fees and charges are reasonable.' " *In re Watson*, 384 B.R. at 706 (quoting *In re Sanchez*, 372 B.R. 289, 306 (Bankr. S.D.Tex.2007)). Language reflecting the fundamental fact of the Court's jurisdiction to determine the reasonableness of fees and charges incurred during the pendency of the plan cannot be objectionable. It is, of course, the limit of that jurisdiction and details of how it is exercised that must be examined.

Not surprisingly, beyond some basic level of agreement, different courts' view of the proposed language varies in the details. Some districts have instituted local rules addressing these issues and there is an ongoing effort on the national level to craft a national rule. All of this activity creates a tension for an individual court. The chapter 13 system cannot be brought to a halt while these issues are resolved on a national level. By the same token any individual court's resolution of the matter is likely to be but a single input into an evolutionary process. When and if a national rule is instituted, individual court orders setting out detailed procedures will likely be obsolete.

■ In the end, while we await the results of those broader rule-making efforts, individual courts can only make their decisions with respect to specific language that has been proposed by a debtor and object-

ed to by a creditor. The burden is upon the objecting creditor to do more that point to a particular paragraph and make the claim that its rights have been modified in violation of § 1322(b)(2). A creditor must enumerate specific "rights" that have been modified and show the Court how that modification impermissibly goes beyond the bounds of the modifications that are either explicitly allowed by the Code or implied by those Code sections.

### A. *In re Nelson; Second Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims*, dated June 12, 2008 (docket # 25).

### 1) Allowance of Mortgage Fees and Charges

■ The Court will deny confirmation. Paragraph V.G.10 instructs that "creditors seeking fees for legal services, servicing fees or similar fees or charges … performed after the filing of the case … must apply to the court for approval of said fees." This language will not be approved by the Court for two reasons: 1) it improperly shifts the burden to the creditor to make application for approval of fees and charges; and 2) it places no time limitation on the Court's jurisdiction to adjudicate issues regarding fees and charges.

The deed of trust at issue here gives the creditor the right to charge reasonable attorney fees and other charges that are necessary to protect its security interest. By the operation of chapter 13, this Court has the jurisdiction to make the determination as to the reasonableness and necessity of those fees and charges incurred during the pendency of the chapter 13 plan. However, this limitation on a creditor's right to collect its fees and charges does not imply the necessity to make appli-

cation to the court for approval. *In re Padilla*, 389 B.R. 409, 443 (Bankr.E.D.Pa. 2008) (A post-confirmation mortgage creditor docs not "seek payment of legal expenses 'from the estate,' as required for [Rule 2016] to apply."); *but see In re Sanchez*, 372 B.R. 289, 305 (Bankr. S.D.Tex.2007) (Mortgage creditor's "failure to disclose charges to the [debtor] and its concomitant failure to file Rule 2016 applications with the Court, render those charges per se unreasonable.").

By the same token, a creditor's unilateral decision to keep its post-petition fees and charges a secret from a debtor until the bankruptcy case is closed deprives him from the opportunity to examine those charges and bring the issue of the reasonableness of those charges before the bankruptcy court. Such notice of fees and charges may not be statutorily required, *Padilla*, 389 B.R. at 441–42, but creditors have no "right" of non-disclosure that is protected from modification by § 1322(b)(2). Thus, a provision requiring notice of fees and charges would not run afoul of § 1322(b)(2).

■ The bankruptcy court's jurisdiction to determine the reasonableness and necessity of post-petition fees and charges

is not exclusive, but is a jurisdiction shared concurrently with the state courts. During the pendency of the bankruptcy case, both the creditor and the debtor are actively under the jurisdiction of the bankruptcy court. Thus, the most conservative use of judicial resources would dictate that the bankruptcy court is the most appropriate forum to adjudicate issues relating to fees accrued during the bankruptcy case. But, both creditors and debtors, as well as the bankruptcy courts themselves, have an interest in finality of bankruptcy proceedings once the case is closed. Accordingly, the Court will not approve provisions that open the door to bankruptcy court adjudication of fee issues after discharge and closing of the bankruptcy case. At that point, the interest of the Court and the parties in finality is stronger than the debtor's interest in returning to the bankruptcy court to examine those issues.[1]

### 2) Accounting for Payments

■ Paragraph V.G.11 of Debtors' plan contains provisions relating to the application of payments and notice of changes in interest rate or escrow requirements. The Court will not approve a plan with the language as it currently appears

1. To get some perspective on the problems that may arise in this context, the Court examined the Nelson deed of trust. It provides that sums disbursed to protect the security interest (attorney fees; appraisals; etc.) accrue interest at the rate prescribed by the note from the time of disbursement. They are due and payable when the debtor is notified of the charges and payment is requested by the creditor. The Court saw no language that required timely notice of that type of fee. If the creditor should choose not to raise the fee issue until the loan is due for pay-off, today's $500 attorney fee may bloom into a several thousand dollar charge years down the line after accrued interest is added. Because of the accrual of interest, a debtor has an interest in knowing of the charge as soon as possible. But, the Court has an interest in con-

serving judicial resources and not engaging in multiple adjudications of fee disputes. By the time the Court is willing to examine fee issues at the end of the case, many of the fees will have been incurred over the previous four years. If the Court should find a particular fee or charge is not allowable, it can't merely disallow the face value of the fee. The interest has to be backed out, often through multiple interest rate adjustments. If the Court were to disallow a fee without considering the accrued interest on the fee, the debtor receives only partial relief and the creditor keeps the interest accrued on a disallowed fee. The Court makes this observation solely to give interested parties a feel for the Court's view of the complexity of the issue. Ultimately, the interested parties are the ones who will have to resolve these matters.

in the Debtor's plan. Confirmation of a plan cannot cause a mortgage loan account that is not otherwise current to become current. But, upon plan confirmation, to require the creditor to treat the account as if the pre-petition arrearage has been brought current for the purposes of accounting for post-petition payments is consistent with § 1322(b)(5) and is acceptable. Addition of the language suggested by Judge Brooks in *In re Hudak* as discussed above is necessary to clarify the intent of that provision.

The Court will not approve language requiring a payment to be applied in the month the payment is made. That directly contradicts the language of the deed of trust controlling the application of payments and does impermissibly modify the creditor's rights under § 1322(b)(2). To be clear, that provision controlling the application of payments is altered by the Debtors' inclusion of the cure and maintain provision under § 1322(b)(5). That is a perfectly permissible modification. Chase must treat the loan as current for the purpose of accounting for post-petition payments but, with that qualification, Chase has the contractual right to follow the application of payments provision as outlined in the deed of trust as to post-petition payments received from the Debtors.

### 3) Notice of Payment Changes

■ The Court will not approve the provision requiring notice of interest rate changes and escrow changes as it is currently written in Paragraph V.G.11. In the vast majority of cases, any purpose served by giving notice to the trustee is outweighed by the burden to creditors imposed by the requirement. It certainly

would be necessary in a case where ongoing monthly mortgage maintenance payments are made through the trustee. But that is not how the Nelsons have proposed to pay their ongoing monthly payments, so notice to the trustee serves no purpose in this case. Nor does notice to the Nelsons' attorney serve a sufficient purpose to outweigh the burden to the creditor. The Court can understand the desire of more dedicated attorneys to monitor all aspect of their clients' cases but the only party who needs to respond to that information is the Debtors themselves. Consequently, in a case where only the debtor is responsible for making ongoing payments, only the debtor need receive timely notice of interest and escrow changes that affect the amount of that payment.[2] The Court will also note that timely notice of such changes requires notice far enough in advance of a payment change to allow a debtor to make the new payment in the proper amount when it falls due.

■ In this case, Chase objects to the inclusion of the provision for notice of changes in interest rate because the Nelson' loan is not an adjustable rate loan and the interest rate will not change. What that means, of course, is that the provision will require no action by Chase whatever. It is free to ignore it because it is inapplicable. That does not form a reasonable basis for objection to confirmation of the plan.

B. *In re Guenther; Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims* dated October 16, 2008 (docket # 31).

The Court will deny confirmation. Paragraphs 10 and 11 of the Guenthers'

---

**2.** There is certainly room for disagreement on this point. It is not unlikely that a future national rule, or even a local bankruptcy rule, may require broader notice than what this Court thinks is necessary.

plan are substantially identical to the same paragraphs in the Nelsons' plan. The same comments the Court made in relation to the Nelsons' plan are applicable to the Guenthers' plan.

C. *In re Davis; Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims; dated August 28, 2008 (docket # 16).*

The Court will deny confirmation. Paragraph V.G.4 of the Davis plan is substantially identical to Paragraph V.G.11 of the Nelson and Guenther plans and the same comments apply.

In Paragraph V.G.5, the plan provides that the Court will retain jurisdiction to adjudicate post-petition fees and charges imposed by the mortgage creditor. That provision is acceptable as far as it goes but it does not go far enough. In connection with the Nelson case, the Court discussed the problem with a jurisdictional provision that fails to state a time limitation on the Court's jurisdiction to adjudicate disputes relating to fees and charges. Those comments apply in this case as well.

Until a local or national rule is developed, the Court is satisfied with a provision that merely states that mortgage fees incurred during the case are subject to bankruptcy court review prior to the closing of the case. The details of the process may be best addressed by an overall— hopefully consensual—fee review process.

D. *In re Allison: Third Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims, dated November 5, 2008 (docket # 47).*

Since the three previously discussed cases have been at issue, as a result of Judge Brooks' *Hudak* decision and informal comments by this Court at subsequent chapter 13 confirmation hearings, some debtors' counsel and creditors' counsel have made great, and much appreciated, efforts to develop compromise language acceptable to both sides. That such language will be acceptable to all debtors' counsel and all creditors and their counsel is probably wishful thinking at this stage. Nonetheless, their efforts have helped advance the issues presented. The Allison plan contains some of this newer language and Countrywide Home Loans has raised objections. The Court has considered that language in this group of cases in hopes that further guidance in this area will allow the parties to achieve greater consensus.

*1) Res Judicata Effect of Confirmed Plan*

■ The creditor objected to Paragraph V.G.3 of the Debtor's plan. That provides that the mortgage arrearage figure appearing in the plan is the Debtor's best estimate of the arrearage amount and advises creditors that they should protect their interests by objecting to the plan. Failing an objection, the amount appearing in the plan becomes res judicata. The Court rejects the creditor's objection to that paragraph. The language in Paragraph V.G.3 is consistent with § 1327 of the Code and with 10th Circuit case law respecting the effect of plan confirmation. 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."); *In re Mersmann*, 505 F.3d 1033, 1047 (10th Cir.2007) (Section 1327 "serves the same purpose as the general doctrine of res judicata.").

*2) Notification of Billing Changes*

■ The creditor has objected to Paragraph V.G.8 of the Debtor's plan. The

paragraph says customary notices such as payment changes, payment addresses, escrow balances, etc. may be sent directly to the Debtor and that confirmation of the plan operates as the Debtor's consent to receive such notices. The Court will first draw the creditor's attention to GPO 2008–1. It says, in essence, that such communications are not a violation of the automatic stay. It is arguable that Paragraph V.G.8 is not strictly necessary because it is duplicative of the GPO, but neither is it objectionable. The creditor claims its contractual rights have been altered by this language, but gives the Court no guidance as to why it believes it has a right not to communicate with its borrower.

### 3) Application of Cure and Maintenance Payments

Paragraph V.G.9 of the Allison plan is substantially identical to Paragraph V.G.11 of the Nelson Plan with the important exception that the provision requiring the creditor to deem the loan to be current upon confirmation now includes the qualifying language that the provision is contingent upon the debtor actually curing the arrearage in accordance with the plan. With the addition of the qualifying language, that provision of Paragraph V.G.9 is acceptable to the Court. However, the provision in that paragraph that ongoing maintenance payments made post-petition must be applied to the month in which they are made also appeared in the Nelson plan and that language is unacceptable to this Court for the same reasons discussed previously in connection with the Nelson Plan. For this reason, confirmation of the Allison plan will be denied.

### 4) Fees and Charges

■ Paragraph V.G.10 of the Allison plan is a complete revision of provisions the Court has previously reviewed dealing with fees and charges that a mortgage creditor may collect in connection with its mortgage loan. Under this provision, completion of the arrearage cure payments under the plan is the trigger point for action. Under Paragraph V.G.10, within 30 days after completion of the cure payments, the Chapter 13 Trustee must serve notice to the creditor, the Debtor and Debtor's counsel that the final cure payment has been made. If the Trustee fails to file the statement, but the Debtor believes the final cure payment has been made, the Debtor may file the statement. In either case, the creditor must respond within 21 days and its response is to be in the form of a supplement to its proof of claim. The creditor's response will indicate whether or not it agrees that the arrearage has been cured. In addition, it must state whether all payments necessary to maintain post-petition obligations have been made. The creditor's statement must include an itemization of any payments that are due to cure the arrearage or maintain post-petition payments to the date of the statement. It must also itemize any post-petition fees and charges that have been added to the loan balance. At that point, if either the Debtor or Trustee disagrees with the Creditor's statement, they may file a motion requesting a hearing. If a hearing is requested, the Court must determine the status of the loan.

This is the most difficult aspect of all the issues raised by language that now appears in chapter 13 plans to deal with residential mortgage issues. The proposed language accomplishes some things that this Court believes are quite desirable: 1) it limits the creditor's burden to supplying a statement of the loan's status in response to the Trustee's or Debtor's notice that the final cure payment has been made; 2) it limits the Court's involvement to a single hearing in the event a dispute arises between the parties; and 3) since the final cure payment is likely to

occur late in many chapter 13 cases that seek to cure a mortgage arrearage, at least in those cases the Court may have some confidence that it is adjudicating issues that are unlikely to be rendered moot by a later default in the Debtor's plan. The Court finds this provision acceptable, but with reservations.

There are a number of issues that now may come up prior to granting a debtor a discharge in chapter 13. Where a debtor has obtained an order valuing real estate for the purpose of stripping off junior mortgages under § 506, they cannot get an order actually avoiding the junior mortgage until after the completion of plan payments. In addition, a discharge cannot be entered without a certification that domestic support payments are up to date. That may also be the most logical time to address the mortgage status and fee issues. Using the mortgage cure as the trigger point, in some cases, will require the parties to address mortgage status and fee issues at a fairly early point in the case with plenty of time remaining prior to discharge for new fees to be incurred and issues to arise with respect to ongoing maintenance payments. The Court does have concerns that it will be called upon to adjudicate these issues too early in some cases. The Court's time is most efficiently utilized where these issues are presented at or near the time plan payments are completed and a debtor seeks entry of the discharge.

The issues for the Court are whether the proposed provision impermissibly modifies the mortgage creditor's rights in violation of § 1322(b)(2) or is unduly burdensome to the creditor, the Trustee or the Court. It does not violate § 1322(b)(2). How can a mortgage creditor claim a "right" not to account to its borrower and the Court for its application of payments provided for by a confirmed plan?; how can it claim a "right" not to disclose accrued fees and charges? Other than making boilerplate allegations that its client's "rights" are being modified, Countrywide's counsel has failed to point the Court to any concrete example of how the provision modifies Countrywide's rights under the note and deed of trust. In addition, the Court finds that the burdens this provision places upon the creditor and upon the Trustee and the Court are acceptable.

There are other mechanisms the Court can imagine to address these issues. It is likely that a national rule, or even a local rule, may appear before this plan is consummated that will put a standardized procedure in place to address issues related to loan status and ancillary fees and charges. The Court is not aware whether or not the language in this provision of the plan represents consensus language worked out among local creditors' counsel and debtors' counsel. If so, so much the better. But, if not, neither the Court nor the parties have the luxury of waiting until that consensus occurs or a national rule is promulgated.

## III. CONCLUSION

The Court appreciates the efforts of counsel on both sides of these issues. Counsel have provided the Court with briefing and argument that has aided it in making its determinations. There is much in the above discussion that is reasonably straight-forward but the more difficult issue is that of getting adequate notice to a debtor of the ancillary fees and charges that have accrued during the pendency of the chapter 13 case and allowing an opportunity to bring any dispute as to those charges before the bankruptcy court prior to the closing of the case.

In addition, the intended operation of the § 1322(b)(5) cure and maintain provision is to allow a debtor to exit his bankruptcy case with his mortgage loan in a fully current status. All of the efforts of the debtor and the resources of the bank-

ruptcy court have been wasted if a debtor exits bankruptcy with a mortgage loan in a default status and immediately faces a fresh foreclosure proceeding.

It is the area of making sure that the loan is in current status at plan completion and resolving fee issues that cries out for national level rule-making because of the national reach of the typical mortgage creditors and servicers. The Court very much appreciates the efforts of counsel representing the interests of the debtor and creditor communities to fashion some consensus solutions on the local level. Those efforts should also be of value to the national level discussions.

In accordance with the foregoing discussion, it is

**ORDERED** that, in the case of Nathaniel E. Nelson, Sr. and Cassandra Ann Nelson, Case No. 08–13756 HRT, confirmation of the *Second Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims,* dated June 12, 2008 (docket # 25), is DENIED. The Debtors are ORDERED to file, on or before January 23, 2009, an amended Chapter 13 plan along with a notice to the Chapter 13 Trustee and the mortgage creditor which (a) establishes the deadline of February 11, 2009, for the filing of objections to confirmation, (b) schedules an evidentiary hearing regarding plan confirmation set for **Thursday, February 26, 2009, at 1:30 p.m.** in Courtroom B, U.S. Custom House, 721 19th Street, Denver, Colorado 80202 and (c) establishes the deadline of February 23, 2009, for the filing and exchanging of lists of witnesses and exhibits. Failure to file the amended Chapter 13 plan, notice and certificate of service on or before January 23, 2009, shall establish cause for dismissal of the within case. Debtors' Certification of Objections Filed or Verification of Confirmable Plan must be filed on or before February 18, 2009. It is further

**ORDERED** that, in the case of Thomas Lee Guenther and Katrina Adele Ryan–Guenther, Case No. 08–21472 HRT, confirmation of the *Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims* dated October 16, 2008 (docket # 31), is DENIED. The Debtors are ORDERED to file, on or before January 23, 2009, an amended Chapter 13 plan along with a notice to the Chapter 13 Trustee and the mortgage creditor which (a) establishes the deadline of February 11, 2009, for the filing of objections to confirmation, (b) schedules an evidentiary hearing regarding plan confirmation set for **Thursday, February 26, 2009, at 1:30 p.m.** in Courtroom B, U.S. Custom House, 721 19th Street, Denver, Colorado 80202 and (c) establishes the deadline of February 23, 2009, for the filing and exchanging of lists of witnesses and exhibits. Failure to file the amended Chapter 13 plan, notice and certificate of service on or before January 23, 2009, shall establish cause for dismissal of the within case. Debtors' Certification of Objections Filed or Verification of Confirmable Plan must be filed on or before February 18, 2009. It is further

**ORDERED** that, in the case of Jeffrey Barrett Davis, Case No. 08–17931 HRT, confirmation of the *Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims;* dated August 28, 2008 (docket # 16), is DENIED. The Debtor is ORDERED to file, on or before January 23, 2009, an amended Chapter 13 plan along with a notice to the Chapter 13 Trustee and the mortgage creditor which (a) establishes the deadline of February 11, 2009, for the filing of objections to confirmation, (b) schedules an evidentiary hearing regarding plan confirmation set for **Thursday, February 26, 2009, at 1:30 p.m.** in Courtroom B, U.S. Custom House, 721 19th Street, Denver, Colorado 80202 and (c) establishes the

deadline of February 23, 2009, for the filing and exchanging of lists of witnesses and exhibits. Failure to file the amended Chapter 13 plan, notice and certificate of service on or before January 23, 2009, shall establish cause for dismissal of the within case. Debtors' Certification of Objections Filed or Verification of Confirmable Plan must be filed on or before February 18, 2009. It is further

**ORDERED** that, in the case of Sherry Lynn Allison, Case No. 08–13629 HRT, confirmation of the *Third Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims,* dated November 5, 2008 (docket # 47), is DE-NIED. On December 22, 2009, the Debtor filed an amended plan in compliance with the Court's Minutes of Proceeding Order dated December 4, 2008. The parties will continue to the follow the dates and procedures set out in the December 4, 2008, minute order, except that the time to file briefs regarding any continued objections to the amended plan is extended to January 9, 2009.