In re Kenneth L. MITCHEM, Debtor.

Kenneth L. Mitchem, Plaintiff

v.

Branch Banking and Trust
Co., Defendant.

In re Meredith R. Buist, Debtor.

Meredith R. Buist, Plaintiff

v.

Branch Banking and Trust
Co., Defendant.

Bankruptcy Nos. 10–62275, 10–62276.
Adversary Nos. 10–06103, 10–06105.

United States Bankruptcy Court,
W.D. Virginia,
Lynchburg Division.

April 1, 2011.

Stephen E. Dunn, Stephen E. Dunn, Esq., Forest, VA, for Debtor.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

An evidentiary hearing was held on December 14, 2010, to consider the Debtors' Complaint and Branch Bank & Trust Company's (hereafter "BB & T") Answer.[1] At

---

1. The Court notes that Debtor Mitchem and Debtor Buist have separate bankruptcy proceedings and have filed identical adversary proceedings, though under separate adversary proceeding numbers. The Court will address the issues presented in one Decision and Order that shall be docketed in each of the Debtors' respective adversary proceedings and main bankruptcy cases.

the conclusion of the December 14, 2010 evidentiary hearing the Court continued matters to March 15, 2011 to provide the parties with an opportunity to make closing arguments. After considering the pleadings, the evidence and the arguments of the parties the Court makes the following findings of fact and conclusions of law.

### Facts

The Debtors filed their joint Chapter 13 petition on August 9, 2010. The Debtors own real property located at 4404 Boonsboro Road, Lynchburg, VA 24503 (hereafter the "Property"). The Property serves as the Debtors' residence. The Property is subject to a first lien held by Countrywide Bank, FSB, which is secured by a promissory note and first deed of trust in the amount of $208,000.00 (hereafter the "Countrywide Note"). The Property is also subject to a second lien held by BB & T, which is secured by a promissory note and second deed of trust in the amount of $50,000.00 (hereafter the "BB & T Note").

On August 26, 2010, the Debtors filed their complaint in the above-captioned adversary proceeding seeking to have the BB & T Note declared to be unsecured under 11 U.S.C. § 506(a) and to have the BB & T Note avoided under 11 U.S.C. § 506(d). The Debtors contend that the value of the Property is less than the amount owed on the Countrywide Note and thus, the BB & T Note should be treated as unsecured. BB & T disputes the value assigned by the Debtors to the Property.

### Discussion

For purposes of avoiding consensual liens in Chapter 13, *In re Millard,* 414 B.R. 73 (D.Md.2009) *affirmed* 2010 WL 5158561 (4th Cir. Dec. 15, 2010) holds that wholly unsecured consensual liens that attach to the debtor's real property may be avoided under 11 U.S.C. § 506 and are not subject to the anti-modification protection of 11 U.S.C. § 1322(b)(2). However, where even the slightest bit of equity remains in the subject property such that the lien in question is partially secured, the lien may not be avoided. *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Thus, in this case, BB & T's lien can only be avoided if the value of the Property is less than or equal to the amount secured by the Countrywide Note.

At the hearing both parties presented evidence to establish the value of the Property. The Debtors presented the testimony of Don Harvey, an appraiser hired by the Debtors, William Coalson, an appraiser hired by BB & T, Debra Douglas, a realtor, and the female debtor. BB & T relied solely on the testimony of Mr. Coalson.

Evidence presented by the Debtors supported a fair market value of the Property ranging from $197,500.00, from Mr. Harvey, to $199,500.00 from Ms. Douglas, to $260,000.00 from Mr. Coalson. Evidence presented by BB & T supported a fair market value of the Property of $260,000.00.

While rationalizing competing valuations is not an easy endeavor, the Court notes that the facts presented by this case make determining the appropriate value particularly difficult. This is due to the fact that the first floor of the Property has been subjected to extensive renovation efforts that have resulted in its current state wherein the living room area and kitchen area are, in essence, empty shells. Thus, the traditional means of comparing similar properties to determine value is made somewhat inapplicable by the fact that finding properties in a similar geographic region that are similar in size and in a similar state of disrepair is near impossible.

However, in determining the appropriate value of the Property the Court notes a significant similarity concerning how the proffered values were obtained. In testifying as to how each arrived at their stated value, Mr. Harvey, Ms. Douglas, and Mr. Coalson first stated that if the Property were fully completed the value of the Property would range from approximately $249,900.00 to $275,000.00. Then Mr. Harvey, Ms. Douglas, and Mr. Coalson, reduced that value by what they perceived the cost would be to make the necessary repairs in order to bring the property to full value. Thus, the ultimate question with regard to value is which appraisal was most accurate in determining the costs required to repair the Property such that its value, in its completed state, would be between $249,900.00 to $275,000.00.

One area of contention that arose with regard to the cost to complete the required repairs centered on Mr. Harvey's and Mr. Coalson's differing assessment of the quality of materials needed to be used in the kitchen. Mr. Harvey testified that the kitchen needed to be finished with "cherry cabinets," "stainless steel appliances," and "granite countertops." Transcript of Record at 18, *Mitchem v. Branch Bank & Trust Co.*, No. 10–06103 (Bankr.W.D.Va. Feb. 9, 2011).[2] Mr. Harvey testified that the approximate cost to install a kitchen like the one he described is $15,000.00 to $20,000.00. Tr. at 19. Mr. Harvey further testified that houses in the $250,000.00 to $260,000.00 price range in the same geographic area as the Property had kitchens that had materials of similar quality to those he recommended. Mr. Coalson testified that the kitchen could be completed for approximately $8,000.00. Mr. Coalson testified that this kitchen would include formica countertops, "Lowes type cabinets" and use the appliances that the Debtors currently have in the house. Tr. at 76. While Mr. Coalson testified that he believed that a kitchen using the quality of materials he recommended would be competitive with kitchens found in properties in the $250,000.00 to $260,000.00 price range the Court finds that Mr. Harvey's testimony is more credible. However, the Court notes that the female debtor testified that they already have a refrigerator, stove and oven so the Court will reduce Mr. Harvey's estimate by $2,000.00 to $3,000.00 since that was his stated approximation of cost for new appliances. Tr. 25. Therefore, when calculating the cost required to repair the Property in order to realize the Property's full value the Court will use the range of $12,000.00 to $18,000.00 as the costs associated with the kitchen cabinets, appliances and countertops.

With regard to the remaining costs of repairs neither Mr. Harvey nor Ms. Douglas could provide the Court with any evidence more concrete than their statements that they used their experience to determine what it would cost to finish the remaining repair items. Mr. Coalson's appraisal, however, provided uncontroverted values for what it would cost to finish the remaining repair items. Without reciting them individually, Mr. Coalson's estimated repair cost was approximately $19,250.00, excluding Mr. Coalson's estimate of costs related to the kitchen. BB & T Exhibit 2 at Addendum Page 1, *Mitchem v. Branch Bank & Trust Co.*, No. 10–06103 (Bankr. W.D.Va. Dec. 13, 2010).[3] The Court finds Mr. Coalson's detailed estimate of costs to

---

2. The citation for Ms. Buist's case is Transcript of Record at 18, *Buist v. Branch Bank & Trust Co.*, No. 10–06105 (Bankr.W.D.Va. Feb. 9, 2011).

3. The citation for Ms. Buist's case is BB & T Exhibit 2 at Addendum Page 1, *Buist v. Branch Bank & Trust Co.*, No. 10–06105 (Bankr.W.D.Va. Dec. 13, 2010).

cure the non-kitchen items to be more credible than those arrived at by Mr. Harvey and Ms. Douglas.

Having determined the cost to cure the kitchen to be from $12,000.00 to $18,000.00 and the cost to cure the remaining repair items to be $19,250.00 the Court finds that the value of the Property, were it in full completed condition, should be reduced by $31,250.00 [4] to $37,250.00 [5].

In arriving at the appropriate value of the Property the Court finds the testimony of Ms. Douglas regarding the value of the Property, were it in fully completed condition, to be the most credible. Accordingly, the Court will use $249,900.00 as the basis from which the Court will subtract the costs to cure the needed repairs. Subtracting the value of costs of repair from the $249,900.00 figure the Court finds that the approximate current value of the Property is between $212,650.00 [6] to $218,-650.00 [7].

Since the value of the Countrywide Note is $208,000.00 there is an equity cushion of between $4,650.00 [8] to $10,650.00 [9] in the Property. The BB & T Note attaches to this equity cushion and thus, is partially secured by the Property. Since *Nobelman* proscribes debtors from avoiding consensual liens that are partially secured by the subject property, the Debtors are not permitted to avoid the BB & T Note under § 506(d). Accordingly, it is

### ORDERED

That Branch Bank & Trust Company's claim in the Debtors' respective bankruptcy proceedings is partially secured by the Debtors' real property located at 4404 Boonsboro Road, Lynchburg, VA 24503 may not be avoided and the relief requested by the Debtors is **DENIED**.

---

4.   $12,000.00 + $19,250.00 = $31,250.00.

5.   $18,000.00 + $19,250.00 = $37,250.00.

6.   $249,900.00 - $37,250.00 = $212,650.00.

7.   $249,900.00 - $31,250.00 = $218,650.00.

8.   $212,650.00 - $208,000.00 = $4,650.00.

9.   $218,650.00 - $208,000.00 = $10,650.00.